# FARR *v*. VALENTINE.

### SLANDER AND LIBEL.

Statements in a letter from the Commissioner of Indian Affairs to the Secretary of the Interior, recommending the dismissal of an employee of the Indian Bureau on the ground of his unfitness for his position, are privileged, and cannot be made the basis of an action of libel by the employee against the Commissioner, when relevant to the purpose of the letter; and oral statements officially made by the Commissioner to the Secretary, concerning the same employee and his unfitness to remain in the service, embodying the substance of letters written by the Commissioner to subordinates in the field, are also privileged, and cannot be made the basis of a count for slander in the same action. (Following *DeArnaud* v. *Ainsworth*, 24 App. D. C. 167, 5 L.R.A. (N.S.) 163.)

No. 2366.   Submitted February 9, 1912.   Decided March 4, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to a declaration for libel and slander, and dismissing the action, the plaintiff electing not to amend.    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This appeal involves a judgment in the supreme court of the District sustaining the defendant's demurrer to plaintiff's declaration in libel and slander, the plaintiff, Joseph R. Farr, electing to stand upon his declaration.

The first count of the declaration is in libel, and contains much matter in inducement, to the effect that the plaintiff was a general superintendent of logging in the United States Indian Service, a Bureau of the Department of the Interior, which position he had occupied for many years; that the defendant, Robert G. Valentine, on June 1, 1909, became Commissioner of Indian Affairs, and, as such, head of the Indian Service; that he has since occupied that office; that, prior to his appointment as such officer, the defendant was connected with that Service. It is then alleged that the defendant, on April 20, 1911, at which time he was Commissioner of Indian Affairs, contriving and maliciously intending to injure and disgrace the plaintiff, did write and deliver to Walter L. Fisher, Secretary of the Interior, the following false, scandalous, and defamatory libel (we will omit the innuendoes).

Department of the Interior,
Office Commissioner of Indian Affairs,
Washington, April 20, 1911.

My dear Mr. Secretary:—

I attach a file to the case of Mr. J. R. Farr, general superintendent of logging in the Indian Service. The record in Mr. Farr's twelve years of service is voluminous. There is no question as to his ability along certain lines, but neither is there any question in my mind that we shall never make the success of our forest work in the Indian Service which we should make,

while Mr. Farr is a member of it. Three times I have given him the fullest and fairest opportunity to make good, and three times he has failed.

First. Feeling that charges filed against Mr. Farr by the Forest Service, while he was directly under their orders, and while they throw a great deal of light on Mr. Farr's character were not such as would warrant a man in administering a public office in taking action. I wiped the slate clean for Mr. Farr and gave him a chance to start entirely new. His methods did not change. On the strong belief expressed in many quarters, both within my own service and in the Department, that the reason for this was that Mr. Farr was hampered by not having charge of the Service, I placed Mr. Farr in the ranking position in our forestry work, told him he would have my support and backing, and all I wanted was results. This time, too, he failed.

For the third time, I gave him a chance to be of use to us. I gave him the specific orders, to which I particularly call your attention, in my letter of March 7, 1911. These orders were drawn by me after the fullest consideration and consultation with experts. They were necessary, practicable, and their immediate execution of vital importance to the Service. Mr. Farr replied by his letter of March 15, which, in the opinion of myself and my expert advisers, totally fails to meet the point, and shows that Mr. Farr lost the vantage ground which had been gained by the Indian Office during a personal visit to it by the contractor, Mr. Herrick. It also bears on its face the failure to obey the orders in the Office letter of March 7.

The next letter to which I would particularly call your attention is the letter of Superintendent Sickels, dated March 21. The Office considers Mr. Sickels' letter absolutely sound.

On April 1, I wrote Mr. Farr, calling attention to our previous letters, and repeating our orders, and asking him also to submit an explanation as to why he had not carried them out. The rest of the correspondence from that time forward is all very important, and speaks for itself.

My judgment is that for years Mr. Farr has by no means

given the Office the best use of his many abilities; that he has neglected the real work he should have done; that, as a result of this neglect, there is in existence to-day, either many tangles in the situations where he has worked, or failure to get the best results; that, in a word, he has soldiered.

All through this, he has been shown great consideration by the Office, and has twice been given such an opportunity to make good as seldom falls to a subordinate. He has ended by a direct act of insubordination; and feeling that Mr. Farr does not intend to do the work that we wish of him, and that no further opportunity would change matters, I recommend that he be sent this letter, with the statement hereby made, that his resignation will be accepted if transmitted by wire.

If a precisely similar state of affairs had arisen in my own private business, I should dispense with Mr. Farr's services at once. While I realize that a public officer has to act on the record, and can only follow his own personal judgment, under all ordinary circumstances, except in so far as it is supported by the record, I feel that the record in this case amply supports my recommendation.

Mr. Farr will vigorously protest, and will file, undoubtedly, if permitted, elaborate statements in his defense, and assertions of the injustice done him in this action. I feel, however, that while there will be no objection to his filing anything that he wishes, that conclusive action can be taken at this time without any possibility of unfairness to Mr. Farr, and I so recommend.

Respectively,

R. G. Valentine,
Commissioner.

It is further alleged that, as a result of this letter, the plaintiff was dismissed from his position by the Secretary of the Interior, and that the plaintiff was otherwise damaged.

The second count is in slander. It avers that James A. Carroll was superintendent of an Indian school in New Mexico, a position in the Indian Service; that the plaintiff, in the course of his duties, had investigated certain timber operations and

reported thereon to the Commissioner of Indian Affairs, recommending that a thorough investigation be immediately made; that on October 1, 1909, the defendant, as such superintendent of Indian Affairs, directed Carroll to make the investigation, and, on October 7th, 14th, and 17th, respectively, maliciously wrote Carroll, intending to injure the plaintiff. These letters are set forth in the record. Each concerns the work which Carroll had been directed to perform. The first cautions Carroll to "use lots of salt" in his dealings with the plaintiff; that, although defendant recognized plaintiff's ability "in many lines" the Indian Service would be the gainer if he was no longer connected with it. In the second letter Carroll was told that unless the plaintiff's testimony was "corroborated by independent testimony from someone in whose character and fair purposes" the defendant had confidence, he would not value it. In the third letter it was stated: "You are the doctor on the job, and I wont do a single thing to hamper you; but if you could find another man,—even one not quite so expert as Farr, —conditions broader than Menominee would probably be somewhat benefited by making the change. In short, I want to get Farr out of Wisconsin and Minnesota for a while,—if not out of the Service. It will create a much better feeling all around in connection with certain big jobs ahead of me." The count then proceeds with an averment that on the 12th day of May, 1911, in this city, the defendant, in a certain conversation with Walter L. Fisher, Secretary of the Interior, and in the presence and hearing of other persons, exhibited copies of said letters and did falsely and maliciously say that the substance of said letters expressed his (the defendant's) "true judgment then as now," as a result of which, it is alleged, the Secretary dismissed the plaintiff from his position, and the plaintiff was otherwise damaged.

Mr. *James S. Easby-Smith* for the appellant.

Mr. *Clarence R. Wilson*, United States District Attorney, and Mr. *Reginald S. Huidekoper*, Assistant, for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

We think this case ruled by the decision of the Supreme Court of the United States in *Spalding* v. *Vilas,* 161 U. S. 483, 40 L. ed. 780, 16 Sup. Ct. Rep. 631, and *DeArnaud* v. *Ainsworth,* 24 App. D. C. 167, 5 L.R.A.(N.S.) 163.   In the *Spalding Case* it was ruled that the Postmaster General was directly in the line of his duty when he informed claimants that they were under no legal obligation to respect any transfer, assignment, or power of attorney which was null and void under sec. 3477 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 2320; that the act of the head of one of the Departments of the government, in calling the attention of any person having business with his Department to a statute in any way relating to such business, cannot be made the foundation of a cause of action against such officer.   The court declared that the same general considerations of public policy and convenience which demand for judges of courts of superior jurisdiction immunity from civil suits for damages arising from acts done by them in the course of their performance of judicial functions apply, to a large extent, to communications made by heads of executive departments, when engaged in the discharge of duties imposed upon them by law.   The court said: "The interests of the people require that due protection be accorded to them in respect of their official acts.   As in the case of a judicial officer, we recognize a distinction between action taken by the head of a department in reference to matters which are manifestly or palpably beyond his authority, and action having more or less connection with the general matters committed by law to his control or supervision."

In the *DeArnaud Case,* the defendant was chief of the Record and Pension Office, a Bureau in the War Department.   The plaintiff had made application for a medal of honor, under an act of Congress authorizing distribution of such medals by the President.   The defendant made a report, under departmental regulations, upon such application, to the Secretary of War. This report was charged to have been libelous.   It was held

that the Secretary of War, being the regularly constituted organ of the President for the administration of the military establishment of the United States, rules and regulations promulgated through him must be received as those of the Executive, and, as such, be binding upon all within the sphere of his legal and constitutional authority; that the work of the subordinates of the Secretary is, in contemplation of law, the work of his Department, and entitled to the same privilegel protection attaching to that done by the Secretary in person. The court found that there was nothing in the report that did not "relate to or reflect upon the alleged questionable character of the plaintiff and the want of just foundation for the claim to honorable distinction set up by him." The court further said: "The question of motive, or whether there was a want of good faith on the part of the defendant, in the making of the report, is not a material question in the case. A party is not liable for the motives with which he discharges an official duty; nor is he liable for any mistake of fact he may commit in the course of the exercise of that duty. Public policy affords absolute protection and immunity for what may be said or written by an officer in his official report or communication to a superior, when such report or communication is made in the course and discharge of official duty. Otherwise the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service. Of course, when a party steps aside from duty, and introduces into his report or communication defamatory matter wholly irrelevant and foreign to the subject of inquiry, a different question is presented." The court further found that it is "not the particular position of the party making the report or communication that entitles it to absolute privilege, so much as the occasion of making it, and the reasons of public policy for the immunity."

The above decisions contain an exhaustive review of the authorities. Consequently, it would be a work of supererogation on our part again to review them, and we shall not attempt it. The plaintiff was under the immediate direction and control of the defendant, who was at the head of an important bureau in

the Department of the Interior.   See secs. 437, 441, 462, and 463 of the Revised Statutes, U. S. Comp. Stat. 1901, pp. 248, 252, 262.   Under the last-named section, the Commissioner of Indian Affairs, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, is charged with the management of all Indian affairs and all matters arising out of Indian relations.   Under the order of March 30, 1889, promulgated by the Secretary of the Interior, it was made the duty of heads of bureaus and other officers of the Department, in making recommendations for the dismissal of employees, to state "specifically the reasons therefor," and to submit to the Secretary all papers bearing on the subject.   The defendant, as commissioner, was without authority to remove the plaintiff.   It was in the line of his duty, however, to make recommendation to that end to his superior, the Secretary.   The letter forming the basis of the first count was obviously written in the line of his duty.   The occasion therefore was privileged.   Everything in this letter is relevant to the point upon which it centered,—the unfitness of the plaintiff for the position occupied by him.   Had the Secretary himself written this letter to the plaintiff, and spread it upon the files of the Department as a justification for his action in dismissing the plaintiff, clearly personal motives could not have been imputed to such official conduct.   And yet there is no more reason for imputing personal motives to the conduct of the head of the bureau, who, in the line of his duty, makes such a recommendation to his superior, the head of the Department, than in imputing such motives to the superior himself.   To so hold would, in effect, largely interfere with the proper and effective administration of the business of the Department.   Its head can intelligently act only through subordinates.   But this question was fully reviewed in the *DeArnaud Case,* and requires no elaboration at our hands.

The second count is no better than the first.   It is not based upon the letters which were written by the defendant to the subordinate in the field, but upon the statement of the defendant to his superior, the Secretary, embodying the substance of those

letters.   Here again the defendant was making an official communication in the course and discharge of an official duty.   Had the defendant communicated these statements to one to whom he was under no obligation or duty to report, as the Commissioner of Pensions, a different case would be presented.

The judgment is affirmed, with costs.        *Affirmed.*

An application by the appellant for the allowance of a writ of error to remove the cause to the Supreme Court of the United States was denied April, 1, 1912.