### JONES v. KENNEDY et al.
#### No. 7549.

United States Court of Appeals for the District of Columbia.

Decided March 17, 1941.

James J. Laughlin, of Washington, D. C., for appellant.

Chester T. Lane and Robert E. Kline, Jr., both of Washington, D. C., for appellees George C. Mathews and Robert E. Healy.

Robert E. Kline, Jr., of Washington, D. C., for appellee James M. Landis.

Francis Currie, of Washington, D. C., pro hac vice, by special leave of court (E. Cortlandt Parker, of Washington, D. C., on the brief), for appellee Joseph P. Kennedy.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

VINSON, Associate Justice.

From a second amended complaint of 53 numbered paragraphs, covering 21 pages, a memorial of 107 double column 9″ by 12″ pages, and a book of 253 pages, we are

called upon to determine whether the District Court properly granted defendants' motion to dismiss because of a failure to state any claim upon which relief could be granted.

The defendants named in the complaint are Kennedy, Landis, Mathews, and Healy, members of the Securities and Exchange Commission during the pertinent period, and Burns, Flynn, and Rabell, employees of the Commission at the time of their respectively alleged acts. Burns, Flynn, and Rabell were not served so Kennedy, Landis, Mathews, and Healy were the defending parties in the District Court and the appellees here.

The core of plaintiff's case is the many Commission activities in connection with a stop order proceeding in which he was named respondent. Pursuant to the provisions of the Securities Act of 1933, 15 U. S.C.A. § 77a et seq., Jones filed a registration statement covering a proposed issue of participation trust certificates. Under the terms of the act this statement would become effective in 20 days. On the 19th day the Commission notified Jones that a hearing would be held at which he could appear and show cause why a stop order suspending the effectiveness of the statement should not be issued. The Commission issued a subpoena duces tecum. At the hearing Jones sought to withdraw his statement. A regulation of the Commission provided that a statement could be withdrawn with its consent. It did not consent. At a later hearing Jones renewed his effort to withdraw and moved to dismiss the proceeding and to quash the subpoena. The Commission denied the motions. (Jones' petition for review was dismissed by the Second Circuit Court of Appeals for lack of jurisdiction.[1]) The Commission applied to the District Court for the Southern District of New York for an order requiring Jones to appear, testify, and produce the books in accordance with the subpoena duces tecum. The court held that the attempted withdrawal was ineffective and entered the order requested by the Commission.[2] The Circuit Court of Appeals unanimously affirmed.[3] The Supreme Court in a six-to-three decision reversed.[4]

On this peg the plaintiff hangs a story with many ramifications. He tells of his long experience in the oil industry and of his assistance in directing governmental policy beginning with the call of the Governors' Oil Conference in the early days of the present administration and closing with a request to the President that he remove the Secretary of the Interior.[5] Thereupon, he says, the defendants, being in sympathy "with the public aims and political welfare" of the Secretary, did enter into a conspiracy to destroy his business. Then follows an account of the Commission's investigations, stop order proceeding, and presentation of evidence to a grand jury. Several subsidiary events are interspersed within this main account. From the whole, plaintiff alleges a multitude of unlawful acts maliciously committed by these "conspirators". The nature of his claims are not clearly indicated, but he suggests at least slander, libel, malicious prosecution, extortion, trespass, assault and battery, and interference with business relationships.

### Activities of the Commission

We consider first those allegations which are based upon the actions of the defendants in connection with the investigations, stop order proceeding, and presentation of evidence to a grand jury.[6] At the outset we call attention to the established law that public officers when acting within the scope of their official authority are immune from suits for damages.[7] It is not

---

[1] Jones v. Securities and Exchange Commission, 2 Cir., 79 F.2d 617, certiorari denied 297 U.S. 705, 56 S.Ct. 497, 80 L.Ed. 993.

[2] Securities and Exchange Commission v. Jones, D.C.S.D.N.Y., 12 F.Supp. 210.

[3] Securities and Exchange Commission v. Jones, 2 Cir., 79 F.2d 617.

[4] Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015.

[5] Paragraphs 14 through 23 of the complaint are devoted to this episode. They are irrelevant. Paragraphs 1 through 12 state the citizenships of the plaintiff and defendants and states the position and duties of the latter. Paragraph 13 states that the defendants are sued in their individual capacities.

[6] We classify paragraphs 26, 28, 29, 30, 32, 37, 39, 40, and 42 through 52 under this heading. Some paragraphs have been placed under more than one classification.

[7] Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Glass v. Ickes, August 26, 1940, 73 App.D.C. —, 117 F.2d 273. Contrast the scope of official authority of inferior public officers. Colpoys v. Gates, Jan. 27, 1941, 73 App. D.C. —, 118 F.2d 16.

necessary to outline again the development of, and merit in, this principle.[8] The plaintiff recognizes the doctrine and accepts the challenge of showing acts which fall outside of the immunity.

In these allegations, plaintiff's most substantial charge is that the defendants disallowed the request to withdraw the registration statement. The fact that the Commission misjudged the exact confines of its jurisdiction over registration statements and believed that it was proper under the particular circumstances of a stop order proceeding to petition a district court to subpoena Jones, to which two courts and three Supreme Court Justices agreed, is a long way from acting palpably beyond the duties of an office. It is the normal, necessary thing for an administrative body to make that type of determination in the first instance.

The plaintiff, developing this point in his brief, states, "Only casual reading of the various complaints will show that the appellees [defendants] entered into a conspiracy to destroy appellant [plaintiff] and that their acts were entirely outside the scope of their official duties and were malicious and wilful. It must never be forgotten that the Supreme Court in the Jones v. Securities and Exchange Commission [case] * * * upheld the contentions of the appellant." Then he quotes from that decision commencing with the sentence, "The action of the commission finds no support in right principle or in law."[9]

In that decision the Supreme Court reasoned as follows: The Commission by notifying Jones that there would be a hearing on his application suspended the provision of the statute making a registration statement effective in 20 days. Jones retained the status of an applicant. With this status he had an unqualified right of withdrawal. In the courts a plaintiff has an unqualified right to withdraw his complaint unless there is some prejudice to the defendant. In the instant proceeding others are not prejudiced. A withdrawal accomplishes everything that a stop order does. Nonetheless the Commission promulgated a regulation requiring its consent to a withdrawal and it denied its consent to Jones. "The action of the commission finds no support in right principle or in law." The basis for the subpoena falls.

■ That these defendants, four Commissioners and three employees, entered into a conspiracy and that they acted palpably beyond the functions of their office, the plaintiff's present contentions, were not suggested by the Supreme Court. The court had no such issue before it, and made no such gratuitous observation. Nor do we now conclude that the defendants acted manifestly beyond the duties of their office in the stop order proceeding.[10]

■ Similarly, the carrying out of investigations and the turning over of evidence to the Attorney General for presentation to a grand jury come under the authorized duties of the Commission.[11] And

---

[8] Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440.

[9] 298 U.S. 1, 23, 56 S.Ct. 654, 661, 80 L.Ed. 1015.

[10] The Commission has the power to issue stop orders. 15 U.S.C.A. § 77h(d). The procedure for court review is given in § 77i.

[11] "The *Commission* is hereby empowered to make *an examination* in any case *in order to determine whether a stop order should issue* under subsection (d)". 15 U.S.C.A. § 77h(e). "For the purpose of *all investigations which, in the opinion of the Commission, are necessary and proper* for the enforcement of this subchapter, any member of the Commission or any officer or officers designated by it are empowered to administer oaths and affirmations, *subpena* (sic) *witnesses, take evidence, and require the production of any books, papers, or other documents which the Commission deems relevant or material to the inquiry.*" § 77s(b). "Whenever it shall appear to the Com-

mission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, it may in its discretion, bring an action in any district court * * * to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. *The Commission may transmit such evidence* as may be available concerning such acts or practices *to the Attorney General who may,* in his discretion, institute the necessary criminal proceedings under this subchapter." § 77t(b). (Italics supplied) Paragraphs 40 and 52 read as though the defendants presented the evidence to the grand jury. Plaintiff's book, "And So They Indicted Me", a part of the record, reveals that the Office of the Attorney General made the presentation. See footnote 13.

likewise, plaintiff has not met, in these allegations, the task of showing acts which fall outside of the immunity.

### Acts of Commissioners

■ The allegation directed to a specific act of Kennedy relates to an event which occurred after the first investigation of Jones' business and before the filing of the registration statement. [12] It is alleged that Kennedy told a client of plaintiff that the SEC had "closed" the offices of Jones and that he was "not allowed to sell royalties any more". Plaintiff's book, "And So They Indicted Me", an elaboration of the narrative complaint, included as part of the record, [13] reveals that the statement was made, if made at all, after a temporary consent injunction had been issued against Jones by a district court at the instance of the SEC. [14] The plaintiff has not informed us in respect of the scope of this order. Under these circumstances we determine that the allegation fails to show slander, much less that it is beyond the range of official immunity. [15]

■ The other appellee against whom plaintiff alleges a specific act is Landis. [16] Plaintiff states that he was told that Landis said the defendants did not "have anything on" Jones but that they were "going to get that guy". If such a statement was made, it would seem to reflect upon the disposition of the speaker rather than upon the character of the person to whom it refers. It gives Jones a clean bill of health, so it is not slanderous. Apparently, it is an attempt to allege malice based upon a particular happening. The significance of claiming improper motives will be dealt with later. Presently, we observe that if the statement were placed in its context it might well mean that no competent evidence of Jones' acts is now available but it appears that he has violated the law and the Commission should try to build a case.

### Acts of Subordinates

■ There are several allegations charging acts committed by the employees who were named defendants and not served.[17] By way of illustration, one of the employees while drunk visited the hotel room where plaintiff and his colleagues were gathered. The employee ordered numerous drinks and charged them, without permission, to the plaintiff. In addition he pushed one of plaintiff's staff "plump into an open fireplace" thereby terrorizing others present. There is no statement that such acts were done under the direction and approval of the defendants before us. Under such circumstances, government officials are not liable for the torts of subordinates. [18] Hence, these charges are irrelevant.

■ Other allegations purport to charge unlawful activities by the Commissioners. [19] Upon closer analysis, however, it can be determined that the acts were those of subordinates. These allegations claim that the defendants removed, contrary to an agreement, plaintiff's business books, copied a clientele list, and turned it over to competitors. "And So They Indicted Me" relates that Jones was told that Osterweil and Clark, employees of the SEC, turned the names over to competitors. The conversation between Jones and Rabell set out in the book implies that the Commissioners did not direct the last act done and fails to infer any ratification. As to the removal of the books Jones gives his own eye witness account. The workers were under the direction of Rabell. Thus, these allegations also fail because the superiors

---

The issuance of press releases to which the plaintiff frequently objects also comes within the official privilege. Mellon v. Brewer, 57 App.D.C. 126, 18 F.2d 168, 53 A.L.R. 1519; Glass v. Ickes, August 26, 1940, 73 App.D.C. ——, 117 F.2d 273.

[12] Paragraph 35.

[13] The plaintiff makes it a part of the record in paragraph 41.

[14] See 15 U.S.C.A. § 77t(b) set out in footnote 11.

[15] Plaintiff states that as a result of this remark he was put to the expense of defending a suit brought by the client to recover money. He does not state who won.

[16] Paragraph 38.

[17] Paragraph 33(a), verbal assault by Flynn upon plaintiff's auditor in anteroom at the time of the stop order hearing; (b) verbal assault by Flynn upon plaintiff's executive assistant; (c) the event set out as the example above. Paragraph 34, libel by Burns. Paragraph 36, extortion by Rabell, trespass by Burns.

[18] Robertson v. Sichel, 127 U.S. 507, 8 S.Ct. 1286, 32 L.Ed. 203, Malewicki v. Qvale, 8 Cir., 298 F. 301.

[19] Paragraphs 27 and 31.

are not responsible for the tortious acts of their subordinates. [20]

■ One allegation does say that the defendants acted through defendant Flynn. [21] The preposition "through" should not pierce the protection surrounding those who carry out the services of government, making the Commissioners liable for the acts of an employee. Moreover, the allegation is otherwise defective. The charge is that the defendants through Flynn intimidated the publisher of plaintiff's book causing Jones to publish the book himself. When the whole discursive allegation is read it is difficult to understand just what the claim is. The pleader talks about freedom of speech and press. The gravamen of plaintiff's case is that the defendants have acted palpably beyond the duties of their office. He sues them in their individual capacities. [22] As a result he has divorced all governmental quality from the defendants' acts. His claim must sound in tort, not in the Bill of Rights. Perchance a tenacious mind could spell out some sort of interference with business relationships.

But the claim is so indefinitely stated and there is such grave doubt that the claim, whatever it is, if any, lies against these defendants rather than the publisher that we must hold the allegation to be defective.

■ None of the specific allegations state a claim against the defendants who were served. The general allegations, [23] the statements of malice or other motives, [24] the charges of conspiracy, [25] and the claim of $1,000,000 damages, [26] therefore, add nothing to the complaint.

■ Plaintiff also contends that Lane, McNulty, and Kline, attorneys in the employ of the SEC, have no right to represent Landis, Mathews, and Healy. Our attention has not been called to any statute or rule that prevents attorneys employed by the Commission from representing government officers sued in their individual capacity for acts growing out of or connected with their official duties. Without prohibitory language, their appearance in the case is fair and proper.

Affirmed.

---

[20] See footnote 18.

[21] Paragraph 41.

[22] Paragraph 13.

[23] Paragraphs 25, 51, and parts of many other paragraphs.

[24] Paragraphs 24, 52 and parts of many other paragraphs. Spalding v. Vilas, 161 U.S. 483, 499, 16 S.Ct. 631, 40 L.Ed. 780; Chatterton v. Secretary of State for India [1895] 2 Q.B. 189, 191–2.

[25] Paragraphs 24, 52, and parts of many other paragraphs. Cooper v. O'Connor, 69 App.D.C. 100, 107, 108, 99 F.2d 135, 142, 143, 118 A.L.R. 1440. All activity of a Commission is the result of concerted effort. The allegation of an agreement to conspire, then, has no meaning unless an act palpably beyond official functions is shown.

[26] Paragraph 53.