34540. RIVERS *v.* DIXIE BROADCASTING CORP. *et al.*

DECIDED APRIL 8, 1953—REHEARING DENIED MAY 7, 1953.

*Marvin O'Neal, Jr.,* for plaintiff in error.

*J. Winston Huff, Powell, Goldstein, Frazer & Murphy, Douglas, McWhorter & Adams, Bouhan, Lawrence, Williams & Levy,* contra.

GARDNER, P. J. This is the second appearance of this case in this court. In its initial sojourn with the Court of Appeals the case was, by operation of law, transmitted, under the provisions of. the State Constitution (art. VI, sec. II, par. IV), to the Supreme Court for determination, for the reason that Chief Judge Sutton and Associate Judges McIntyre and Worrill were of the opinion that the judgment of the court below, overruling the defendants' demurrers to the petition, was erroneous and that the demurrers should have been sustained and the petition dismissed, whereas Associate Judges Felton, Gardner, and Townsend held a contrary view. The Supreme Court reversed the lower court with a split decision 4 to 3, holding that the petition as amended was subject to the demurrers urged, relative to the damages sought. *Dixie Broadcasting Corp.* v. *Rivers,* supra. The Supreme Court ruled that the action was one for a malicious use of process, and no general damages were properly recoverable; and it not appearing from the petition as amended that the plaintiff was seeking to recover any special damages, such as could be recovered in an action for malicious use of legal process, the trial judge erred in not sustaining the defendants' demurrers thereto on that ground and in not dismissing the petition as amended. See *Dixie Broadcasting Corp.* v. *Rivers,* supra; *Savannah Broadcasting Co.* v. *Rivers,* supra.

There is, as has been often pointed out, a sharp and clear-cut distinction between a malicious abuse of legal process and a malicious use of such process. In the former, the action lies where the process is maliciously sued out to serve a purpose not intended by the law to be effected thereby. See *Defnall* v. *Schoen,* 73 *Ga. App.* 25 (35 S. E. 2d 564), wherein it appeared that the defendant had sued out a dispossessory warrant against the plaintiff not for the purpose of collecting past-due rental, but in order to coerce and compel the plaintiff to pay a named sum weekly—dispossessory proceedings being sued out to effect a purpose not intended by the law. On the other hand, a malicious use of such process is where the plaintiff in a civil proceeding employs the court's process in order to execute the object which the law intended for the process to subserve, but it must appear that it was sued out maliciously, without probable cause, and that the action terminated in favor of the present plaintiff,

which need not appear in a malicious-abuse action. See *Baldwin* v. *Davis*, 188 *Ga.* 587, 588 (4 S. E. 2d 458). As is pointed out in the opinion of the Supreme Court in this case (209 *Ga.* 98), the filing and prosecuting of a proceeding, before a Federal administrative agency, commission or board, constitutes a civil proceeding such as will give rise to an action for damages where the same is sued out maliciously and there is a want of probable cause and such proceeding results or terminates favorably to the defendant, and where it appears that the malicious suing out and prosecution of the proceeding caused injury and damage to the person against whom it was directed. An action for malicious use of legal process lies only when the person of the plaintiff in the action is arrested or where his property is attached or seized thereby or it appears that some special damage was done to him. *Jacksonville Paper Co.* v. *Owen*, supra. One who sues out a dispossessory warrant against another as tenant holding over and does so maliciously and without probable cause, which terminates in favor of the defendant therein, "is liable to an action for malicious prosecution of a civil proceeding, if any special damage . . . is occasioned thereby"; and "the premises being occupied and used by the tenant as a boarding house, the loss of boarders occasioned by suing out the malicious process was special damage," as were "trouble and expense, including counsel fees, incurred by the tenant in giving bond and security to prevent summary expulsion from the premises by virtue of the malicious process." *Slater* v. *Kimbro*, 91 *Ga.* 217 (18 S. E. 296). In that case the court said that, if the plaintiff had waited and not given bond and had been evicted, she would have been entitled to more damages; that, though the warrant was not executed by eviction, if the suing out of it maliciously and without probable cause, and the attempt to execute it by eviction, occasioned special damage to the plaintiff, she could recover. The warrant was aimed at her possession and would have deprived her of it had she not given bond and security required; that the warrant forced her to give bond to prevent being expelled from the premises and, had she not done so, she would have been expelled. The court went on to say that the action hurt her business and interfered with her boarders and thereby caused her special damage, and she incurred trouble and

expense, including counsel fees, to prevent expulsion, and this would also be special damages. It seems to us that this case is squarely in point, and by amendment the plaintiff has alleged that, because of the action of the Commission in withholding his grant or permit and under the rules and regulations of the Commission and the law, he could not continue with his construction work until the protest had been passed upon, or rather until the permit had been delivered to him; such protest, so maliciously sued out, amounted to an actual interference with his broadcasting business, and this was special damage and injury to him resulting directly from the defendants' actions in making said protest and prosecuting same before the Commission.

In *Southern Ry. Co.* v. *Chambers*, 126 *Ga.* 404 (55 S. E. 37), the court ruled that "malicious injury to the business of another will give a right of action to the injured party." · Under the rulings of the *Kimbro* case, and others along that line, including the one just cited, considering the amendment, the plaintiff has alleged an actual interference with his business resulting from the malicious filing of the protest before the Commission, and same constitutes special injury and damage, such as may be recovered in an action based on the malicious use of such civil process. In the *Chambers* case the Supreme Court said that "malicious injury to the business of another has long been held to give a right of action to the injured party."

Considering these decisions, it appears that, in an action for maliciously suing out civil process, even though the person of the defendant is not arrested nor his property seized, any injury which he sustains to his business as a result or consequence of the malicious suing out of any civil process is an actual and special injury sustained by him; and that this is true even though the plaintiff set up that the defendants made statements or allegations in the pleadings which exposed him to embarrassment, humiliation, and public scorn, which allegations are privileged, being made in a proceeding properly brought had it not been brought maliciously and without probable cause, and such damages caused thereby are not recoverable. The defendants are liable, however, for any actual and special injury sustained by the plaintiff as a consequence of the malicious suing out of

the civil process. The plaintiff alleges by the petition as amended on May 14, 1952, before the remittitur from the Supreme Court was made the judgment of Fulton Superior Court, that the malicious suing out by the defendants, without probable cause, of the proceedings against him caused him actual injury and damage, in that the same amounted to an interference with his radio broadcasting business, maliciously done—that is, he sets up in this amendment that the filing of the protest by the defendants with the Federal Communications Commission on March 8, 1950, caused a delay, for that "Thereafter, and pending a hearing on said protest the . . . Commission in the exercise of its power under the law, did *withhold* issuance of such grant or permit until the final determination of said protest as aforesaid, and did then on the 14th day of August, 1950 [later amendment changed this date to July 24, 1950], finally issue its permit which was subsequently received by petitioner, and petitioner did as soon as possible thereafter again commence the construction of said radio station, petitioner *not being permitted under the law and the rules and regulations of said Federal Communications Commission to continue without issuance of said grant or permit* . . . and in the meantime moving thus been delayed as aforesaid" (italics ours); and all of which amounted to malicious interference with the business of petitioner by the malicious use of process, and he suffered the damages from said delay as aforesaid under said rules and regulations, having been specially damaged as alleged in his original petition.

It is true that the Supreme Court has ruled that the original petition did not show any actual damages, resulting from the action of the defendants in the filing of this protest, as alleged, which were properly recoverable. In the amendment to the petition now dealt with, the plaintiff sets up that the defendants by the malicious suing out and filing of this protest—a civil proceeding—caused a delay in the construction work under the rules and regulations of the Federal Communications Commission, since he could not proceed with the construction of the station until the issuance of the permit by the Commission, which resulted in injury to his business by reason of several things, such as the advancement in price of materials, the loss of advertising, and the fact that he could not operate his radio broadcasting

business from March 8, 1950, until the permit was granted, by reason of the fact that this protest had been so maliciously filed. The plaintiff sets out, therefore, that the defendants have injured his business in a determined amount by the fact that there was a delay in commencing broadcasting because he was forced to postpone completion of the construction of the broadcasting station from the time the protest was maliciously filed, because the Commission did withhold the granting of the permit from that time. In accordance with the rules and regulations of the Commission, the plaintiff bases the injury to his business upon the fact that he was therefore compelled to postpone broadcasting at this station pending the outcome of the protest, under said rules and regulations of the Federal Communications Commission. The plaintiff alleged that, under the law and the rules and regulations of the Commission, he was prevented from continuing such work. In other words, he was not authorized to broadcast at this station without the permit and the Commission was withholding the permit, under said rules and regulations by reason of the protest of the defendant, which was maliciously filed. His business was directly affected by the filing of the protest and he sustained an actual interference with his business by reason of the malicious action of the defendants. *Slater* v. *Kimbro,* supra. While the plaintiff may not have been compelled by any extrinsic order of the Commission to refrain from constructing the station and completing same while the permit was being withheld, he was not, under the law and the rules and regulations of the Commission, entitled to broadcast without the permit so withheld, and he would have been taking a chance of being further damaged by the acts of the defendants, as appeared in *Slater* v. *Kimbro,* had he not held up his completion of the work pending the disposition of the defendants' protest; and he was authorized, if not commanded by the said rules and regulations, not to construct a broadcasting station so long as the protest held up his broadcast license. The plaintiff distinctly alleges in this amendment that he was not "permitted by law and the rules and regulations of the said Federal Communications Commission to continue without issuance of said grant or permit," meaning that he could not operate a broadcasting station without the permit, and the Commis-

sion was withholding the same by reason of such malicious protest of the defendants. This is an allegation of fact, and not a mere conclusion not based on facts as contended by the defendants in their demurrers to the amendment of May 14, 1952. The foregoing allegations were not demurred to specially on the ground that the plaintiff does not show or set out the law and the rules and regulations of the Commission. Rules and regulations of a governmental agency or administrative commission or body, such as the Federal Communications Commission, have the force and effect of law and are binding so long as the same are authorized by and not in violation of the Constitution and the law. See *McIntyre* v. *Harrison*, 172 *Ga.* 65 (157 S. E. 499), to the effect that such rules and regulations are binding as law where same are valid and authorized.

Therefore, it appears to this court that the plaintiff's amendment, offered before the remittitur from the Supreme Court was made the judgment of the Superior Court of Fulton County, was good against the demurrers and motions to dismiss same, and that thereby the plaintiff changed the character or category of the damages sought to be recovered and converted them into such actual damages as the decisions of the Supreme Court ruled, in *Slater* v. *Kimbro*, supra, and others cited, are properly recoverable in suits for the malicious use of civil process, or as some States hold, malicious prosecution of civil process, where there has been no arrest of the defendant or any seizure of his property. *Slater* v. *Kimbro*, supra.

The plaintiff again amended his petition on December 15, 1952, and alleged that, when the defendants filed said protest, the Commission withheld the permit until July 24, 1950, and same was not actually granted to him until that date, and he also set out certain expenses actually incurred in seeking to defend himself before the Commission in Washington, which necessitated his traveling back and forth to Washington, D. C., and Savannah, Georgia, and also the hiring of counsel and of experts to appear before the Commission, and also the spending of large sums for long-distance calls, all to prevent the Commission from continuing to withhold the permit and thereby being further specially damaged in the sum of $9,300.

Under the ruling of the *Kimbro* case, supra, and other cases,

insofar as the plaintiff was injured in his business and incurred expense to prevent it from being destroyed, he sustained special injury and damage as a result of the defendants' maliciously suing out the civil process and thereby interfering with the plaintiff's business. Such damages are properly recoverable as special damages. Any expense incurred by the plaintiff growing out of the interference by the defendants with his business through the malicious filing of the protest are proper items of damage and are special damages, even though the plaintiff's person was not arrested nor his property seized. By said amendments the plaintiff brings his case squarely under the ruling made in *Slater* v. *Kimbro*, supra, and similar cases, and the Supreme Court decision in this case, supra.

The plaintiff alleges in his petition as amended in May of 1952 and in December of 1952 that, by the malicious suing out of the protest before the Commission, the defendants have occasioned him loss in business; that they have interfered with his business of broadcasting; and that he has been put to and incurred certain specified expense in seeking to prevent the sustaining of the protest filed by the defendants, and in bringing about the defeat thereof before the Federal Communications Commission and the termination thereof in his favor. Under the binding decision of the Supreme Court in *Slater* v. *Kimbro*, supra, interference with the plaintiff's business, causing actual damage and expense incurred to prevent the defendants from succeeding in their protest, constitutes special damages which are recoverable. The plaintiff by delaying the completion of the broadcasting station upon the filing of the protest by the defendants and the withholding by the Commission of a permit to the plaintiff, under said rules and regulations promulgated by the Federal Communications Commission, was seeking to protect himself. Furthermore, under the allegations of the amended petition, he could not properly construct a radio broadcasting station until a permit to do so had been issued and delivered to him and the Commission did withhold his permit under said rules and regulations until the date alleged, as a result of the filing of the protest by the defendants. All the items of special damage—alleged in the said original petition and the amendments thereto—now sought by the plaintiff, were

incurred as a result of the interference by the defendants with the plaintiff's business by the malicious use of civil process against the plaintiff, as alleged, by the filing of the protest.

The plaintiff is not entitled to recover any general damages under the allegations made and the ruling of the Supreme Court; but, under the ruling of that court, he is not precluded from the recovery of actual and special damages sustained as a direct result of the interference by the defendants with the operation of his broadcasting business by reason of their maliciously suing out, filing, and prosecuting the protest before the Federal Communications Commission; and, as to any and all such actual and special damages alleged and proved, the plaintiff is entitled to recover. This includes any and all actual expenses and damages alleged to have been incurred by the plaintiff in seeking to prevent the defendants from succeeding in their alleged fell purpose of preventing the issuance of a permit and license to him and of destroying his broadcasting business, in which efforts he was successful. It may be that, had the plaintiff not incurred this expense, employed counsel, and hired experts and procured their attendance before the Commission, and made trips to Washington and before the Commission, the defendants would have succeeded, and said proceedings would not have terminated favorably to the plaintiff. Therefore, under the reasoning of Justice Bleckley in *Slater* v. *Kimbro*, supra, such incurred expenses are recoverable as special damages.

In conclusion, let us say that, since the amendment of the plaintiff filed May 14, 1952, before the remittitur reached the trial court, was good in all respects against the demurrer urged thereto, as we have demonstrated in dealing with it, the petition was thereby kept alive and thus the amendment of December 15, 1952, was permissible, also it was germane and alleged pertinent matter and recoverable special damages. Therefore the trial court erred in dismissing the plaintiff's amended petition.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*