[L. A. No. 24292. In Bank. May 24, 1957.]

ROSS HARDY, Appellant, v. JAMES LESLIE VIAL et al., Respondents.

Desmond & Desmond and Walter Desmond for Appellant.

Edmund G. Brown, Attorney General, Lee B. Stanton, Deputy Attorney General, and George H. Chula, for Respondents.

GIBSON, C. J.—Plaintiff was discharged from his employment as a professor at Long Beach State College as the result of charges made by defendants, and, after reinstatement to his position by the State Personnel Board, he commenced this action for damages for malicious prosecution. He named as defendants seven persons, hereafter referred to as the school defendants, who are officials of the college or of the state Department of Education, and three persons, Vial, Pond, and Egolf, who apparently have no connection with the college or the department.* General demurrers of Vial and the school

---

*Defendant Peterson is president of the college, defendants Rhodes and Bryant are deans, and defendant Johnson is head of the division of the college in which plaintiff is employed. Defendant Roy E. Simpson is Director of Education of the State of California, defendant Vasche is assistant director of education of the Department of Education in charge of state colleges, and defendant Dresser is a special agent and field representative of the department.

defendants were sustained without leave to amend, and plaintiff has appealed from the ensuing judgments. The remaining two defendants are not involved on this appeal.

The allegations of the complaint may be summarized as follows: Defendants wrongfully, maliciously and without probable cause conspired to accuse plaintiff falsely of gross immorality and unprofessional conduct during the period of his employment for the purpose of procuring his dismissal. In pursuance of the conspiracy, defendants Vial, Pond, and Egolf, aided and abetted by the other defendants, made and filed with the college affidavits which charged plaintiff falsely with the commission of acts of a base and depraved nature. By reason of the acts alleged in the affidavits plaintiff was dismissed from his employment at the college effective March 27, 1953. After a hearing the State Personnel Board found that the charges were untrue and that the grounds for the dismissal were not sustained by the evidence. The board revoked the dismissal and ordered defendant Simpson to return plaintiff to his position at the college. No review of the board's decision was sought, and plaintiff was returned to his position.

It is the general rule that a malicious prosecution action may be founded upon a proceeding before an administrative body. Section 680 of the Restatement of Torts declares: ''One who initiates or procures the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby, if (a) the proceedings are initiated (i) without probable cause to believe that the charge or claim on which the proceedings are based is well founded, and (ii) primarily for a purpose other than that of securing appropriate action by the board, and (b) the proceedings have terminated in favor of the person against whom they are brought.'' (In accord, *Melvin* v. *Pence,* 130 F.2d 423, 425 et seq. [76 App.D.C. 154, 143 A.L.R. 149] ; *National Surety Co.* v. *Page,* 58 F.2d 145, 148; *Dixie Broadcasting Corp.* v. *Rivers,* 209 Ga. 98 [70 S.E.2d 734, 740-741] ; *Rivers* v. *Dixie Broadcasting Corp.,* 88 Ga.App. 131 [76 S.E.2d 229, 233] ; *Ranier's Dairies* v. *Raritan Valley Farms,* 19 N.J. 552 [117 A.2d 889, 895-896] ; see *Toft* v. *Ketchum,* 18 N.J. 280 [113 A.2d 671, 673-674, 52 A.L.R.2d 1208], cert. den. 350 U.S. 887 [76 S.Ct. 141, 100 L.Ed. 782] ; 143 A.L.R. 157.)

The theory of these authorities is that the same harmful

consequences may result from the malicious institution of administrative proceedings as from judicial proceedings maliciously begun, whether criminal or civil in nature. ■ As pointed out in the Melvin case, 130 F.2d 423, 426 [76 App. D.C. 154, 143 A.L.R. 149], it makes little difference to a person whether his rights are violated by the institution of proceedings before a court or before an administrative body, and his right to redress for malicious conduct should not depend upon the form of the proceeding by which the injury is inflicted. The court further stated: ''The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty. . . . When private as well as public rights more and more are coming to be determined by administrative proceedings, it would be anomalous to have one rule for them and another for the courts in respect to redress for abuse of their powers and processes.'' (130 F.2d at pp. 426, 427.)

■ We adopt the rule set forth in section 680 of the Restatement of Torts and hold that an action for malicious prosecution may be founded upon the institution of a proceeding before an administrative agency. ■ This rule is in no way dependent upon the type of judicial review which is allowed after decision of the administrative agency involved, and we do not agree with defendants' contention that plaintiff cannot maintain this action because the State Personnel Board assertedly cannot exercise adjudicatory powers and has no authority to make a final determination of a question of fact. In considering the availability of an action for malicious prosecution, no distinction should be made between proceedings commenced before agencies having adjudicatory powers and those commenced before agencies whose findings of fact are subject to trial de novo in a judicial proceeding. Such a distinction is unsound in principle and if adopted would result in unnecessary complexity and confusion. ■ Moreover, it is settled that the State Personnel Board has adjudicatory powers, and its findings of fact will not be disturbed if supported by substantial evidence. (*Shepherd* v. *State Personnel Board, ante,* pp. 41, 46-48 [307 P.2d 4].)

■ The cases of *Vargas* v. *Giacosa,* 121 Cal.App.2d 521 [263 P.2d 840], *Lorber* v. *Storrow,* 22 Cal.App.2d 25 [70 P.2d 513], *Hayashida* v. *Kakimoto,* 132 Cal.App. 743 [23 P.2d 311], and *Cosulich* v. *Stempel,* 81 Cal.App. 278 [253 P. 344], which, without mentioning the authorities listed above or their reasoning, reached a contrary conclusion, are disapproved in-

sofar as they are in conflict with the views expressed in this opinion.

The seven school defendants contend that the judgment should be affirmed because, they assert, they are immune from civil liability. In *White* v. *Towers,* 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636], we held that an investigator for the State Fish and Game Commission, who had the duty to investigate crime and to institute criminal proceedings, was immune from civil liability for the malicious prosecution of a criminal action against the plaintiff. A similar conclusion was reached in *Coverstone* v. *Davies,* 38 Cal.2d 315 [239 P.2d 876], which involved deputy sheriffs and city policemen. The rule of absolute immunity, notwithstanding malice or other sinister motive, is not restricted to public officers who institute or take part in *criminal* actions. First recognized for the protection of judges (*Bradley* v. *Fisher,* 13 Wall. (U.S.) 335 [20 L.Ed. 646]), it has been extended by the federal decisions to all executive public officers when performing within the scope of their power acts which require the exercise of discretion or judgment. (*Spalding* v. *Vilas,* 161 U.S. 483 [16 S.Ct. 631, 40 L.Ed. 780] ; *Standard Nut Margarine Co.* v. *Mellon,* 72 F.2d 557 ; *United States, to Use of Parravicino* v. *Brunswick,* 69 F.2d 383 ; *Jones* v. *Kennedy,* 121 F.2d 40 [73 App.D.C. 292] ; *Farr* v. *Valentine,* 38 App.D.C. 413 ; *De Arnaud* v. *Ainsworth,* 24 App.D.C. 167 [5 L.R.A.N.S. 163] ; see *Papagianakis* v. *The Samos,* 186 F.2d 257, 260-262.) In this state *Downer* v. *Lent,* 6 Cal. 94 [95 Am.Dec. 489], and *Oppenheimer* v. *Arnold,* 99 Cal.App.2d 872, 874 [222 P.2d 940], recognize the same wide immunity. (*Cf.* also *Wilson* v. *Sharp,* 42 Cal.2d 675, 679 [268 P.2d 1062].)

The policy underlying the doctrine of absolute immunity is well stated by Judge Learned Hand in *Gregoire* v. *Biddle,* 177 F.2d 579, 581, as follows: "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most

irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.''

The seven school defendants occupied positions which would ordinarily embrace duties relating to the investigation of charges which could lead to the discipline or dismissal of persons such as plaintiff, and it is not claimed that the school defendants were without authority to investigate and prosecute charges made against employees. Plaintiff contends, however, that the school defendants are not entitled to the protection of the immunity rule because they assertedly acted beyond the scope of their employment when they conspired with the nonschool defendants and aided them in making and filing affidavits containing false charges. ▮ It should be noted in this connection that ''What is meant by saying that the officer must be acting within his power [to be entitled to immunity] cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.'' (*Gregoire* v. *Biddle*, 177 F. 2d at p. 581.) ▮ The alleged purpose of the conspiracy, and, accordingly, the purpose of the school defendants in aiding the nonschool defendants in making the affidavits, was to accomplish the dismissal of plaintiff from his employment. This purpose, of course, was clearly within the scope of the official duties of the school defendants and within the protection of the immunity rule. The policy on which the rule is based would be defeated if it were held that whenever an officer uses his office for a personal motive not connected with the public good he acts outside his power.

▮ The fact that the school defendants sought to attain their objective by acting in concert with other persons cannot properly be treated as destroying the immunity which they

would have if each of them had acted individually and independently of any other person to secure the same result. The underlying theory of absolute immunity is equally applicable whether the employee acts by himself or with others who are not immune. (*Cf. White* v. *Brinkman,* 23 Cal.App.2d 307, 310 et seq. [73 P.2d 254] [public officers treated as acting in their official capacities even though they acted in concert with other persons]; *Yaselli* v. *Goff,* 12 F.2d 396, 406-407 [56 A.L.R. 1239]; *Hoppe* v. *Klapperich,* 224 Minn. 224 [28 N.W. 2d 780, 790, 173 A.L.R. 819]; *Linder* v. *Foster,* 209 Minn. 43 [295 N.W. 299, 301-302].) ▆ Since the seven school defendants have immunity, the judgment in their favor must be affirmed.

The complaint does not allege facts which would entitle Vial to immunity, and we are of the view that a cause of action is stated against him. ▆ While it is not specifically alleged that Vial knew or reasonably should have known that the affidavits were false, it is alleged that he acted without probable cause in conspiring to make false charges against plaintiff and that the making of such charges was in pursuance of the conspiracy. This meets the usual rule that a general averment of want of probable cause is sufficient and that it is unnecessary to add a statement of facts which tend to prove the averment, such as knowledge of falsity. (See *Pulvermacher* v. *Los Angeles Coordinating Committee,* 61 Cal.App.2d 704, 707 [143 P.2d 974]; *Eustace* v. *Dechter,* 28 Cal.App.2d 706, 710 [83 P.2d 523]; 2 Witkin, California Procedure (1954) 1357; 54 C.J.S. 1043; 14 A.L.R.2d 264, 282.)

The judgment in favor of Vial is reversed. The judgment in favor of the other respondents is affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J., Dissenting and Concurring.—I dissent.

I agree with that portion of the majority opinion which holds that an action for malicious prosecution may be founded upon the institution of a proceeding before an administrative agency, and that the judgment in favor of Vial, a nonschool defendant, should be reversed.

I cannot agree with that portion of the opinion which holds that the seven school defendants are entitled to hide behind the outmoded cloak of immunity from civil liability. Furthermore this is an appeal from a judgment entered upon the sustaining of a demurrer to a complaint without leave to

amend. "[T]he only issue involved in a demurrer hearing . . . [is] whether the complaint, as it stands, unconnected with extraneous matters, states a cause of action." (*Griffith* v. *Department of Public Works,* 141 Cal.App.2d 376, 381 [296 P.2d 838].) The rule is well established that the allegations of the complaint must be taken as true. The question is then one of law only and if the plaintiff has stated a cause of action on any theory he is entitled to a trial on the factual issues involved.

Plaintiff's complaint charged that the 10 defendants, seven of whom were school officials,* had engaged in a conspiracy for the purpose of procuring his dismissal from his employment; that in aid of such conspiracy the school defendants aided and abetted the nonschool defendants in preparing affidavits falsely accusing plaintiff of certain vile and depraved acts. Plaintiff also alleged that because of these affidavits and the acts constituting the conspiracy, he was dismissed from his employment; that after a hearing it was unanimously found by the State Personnel Board that the charges against plaintiff were *untrue.* Plaintiff also sets forth in detail the damages suffered by him as a result of the charges made by the defendants. Plaintiff has set forth all the necessary elements of an action for malicious prosecution.

The following statement from the majority opinion is clearly without basis in fact or in law: "The alleged purpose of the conspiracy, and, accordingly, *the purpose of the school defendants in aiding the nonschool defendants in making the affidavits, was to accomplish the dismissal of plaintiff from his employment. This purpose, of course, was clearly within the scope of the official duties of the school defendants* and within the protection of the immunity rule." (Emphasis added.)

It will be recalled that plaintiff charged that the conspiracy was *malicious;* that defendants agreed between themselves to *falsely* charge plaintiff with vile and depraved acts to procure his dismissal. The majority opinion informs us, however, that "The policy on which the rule [immunity from civil liability] is based would be defeated if it were held that whenever an officer uses his office for a *personal motive* not connected with the public good he acts outside his power." (Emphasis added.) It will also be recalled that three of the defendants were *not* school or department personnel. The majority, however, states that this does not remove the protective "immunity" from

---

*Two of the nonschool defendants are not involved on this appeal.

the school defendants. It is difficult for me to imagine how public officials acting with malice aforethought and swearing to falsehoods in conspiracy with outsiders can possibly be considered as acting within the "scope of their authority." The undeniable scope of the authority of school officials is to protect students *from those found unfit to teach* by reason of lack of ability or immoral character. The scope of authority of such school officials is most certainly not to procure the dismissal of teachers by entering into a conspiracy with outsiders to defame and assassinate a teacher's character without justification or probable cause for believing the defamatory remarks to be true. *The question of probable cause cannot be tried on a demurrer hearing* inasmuch as for the purpose of determining the sustainability of the demurrer *every single allegation of plaintiff's complaint must be taken as true.* Aside from the doctrine of governmental immunity, which I will hereinafter discuss, plaintiff was entitled to a trial on the merits since governmental immunity does not apply when the official is acting outside the scope of his authority. A majority of this court held, in *White* v. *Towers,* 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636],* that "It is well established that a public officer is liable for injuries caused by acts done outside the scope of his authority." In cases of this character liability for damages cannot be made to rest on mere conspiracy. *The gravamen of the action is the malicious prosecution of the criminal charge without probable cause. (Dowdell* v. *Carpy,* 129 Cal. 168, 171 [61 P. 948] ; *Andrews* v. *Young,* 21 Cal.App. 2d 523 [69 P.2d 891].) If any public official, under the guise of investigation, may conspire with persons having no official standing to injure others by maliciously and falsely accusing them of base and vile conduct and in so doing escape all liability, it would appear to me that such a result would lead to more, rather than less, dishonesty on the part of public officials. In the other cases in which I have dissented (*White* v. *Towers,* 37 Cal.2d 727, 734 [235 P.2d 209, 28 A.L.R.2d 636] ; *Coverstone* v. *Davies,* 38 Cal.2d 315, 324 [239 P.2d 876] ; *Talley* v. *Northern San Diego County Hospital Dist.,* 41 Cal.2d 33, 41 [257 P.2d 22] ; *Turner* v. *Mellon,* 41 Cal.2d 45, 49 [257 P.2d 15] ; *Peterson* v. *Robison,* 43 Cal.2d 690, 698 [277 P.2d 19] ; dissenting opinion on denial of hearing, *Madison* v. *City & County of San Francisco,* 106 Cal.App.2d 232 [234 P.2d 995, 236 P.2d 141]) a majority of this court had not reached the peak of injustice that it has reached in the case at bar.

---

* (Which I believe was incorrectly decided.)

In my dissent in the Talley case (*supra,* p. 43) I pointed out that "The government obviously cannot insure the citizen against all defects and errors in administration, but there is no reason why the most flagrant of the injuries wrongfully sustained by the citizen, those arising from the torts [in this instance a malicious one] of governmental officers and employees, *should be allowed to rest at the door of the unfortunate citizen alone.* The entire doctrine of governmental immunity rests upon a rotten foundation, and professors, writers and liberal-minded judges are of the view that it should be placed in the judicial garbage can where it belongs. (See *Barker* v. *City of Santa Fe,* 47 N.M. 85 [136 P.2d 480]; 75 A.L.R. 1196; Brooklyn Law Review, April, 1932, '*Should the Liability of Municipalities in Tort be Extended to Include Injury and Damage Caused in the Negligent Performance of a Governmental Function?*'; 120 A.L.R. 1376; 54 Harv.L.Rev., pp. 437-462, '*Municipal Tort Liability in Operation*'.)" I also pointed out that I had thought when *People* v. *Superior Court,* 29 Cal.2d 754 [178 P.2d 1, 40 A.L.R.2d 919], was decided in 1947, that we had begun to revamp our ideas. It was there said that "The considerations of an asserted subversion of public interests by embarrassments, difficulties and losses, which developed the doctrine of nonliability of the sovereign in former times, are no longer persuasive in relation to an industrial or business enterprise which by itself may be looked to for the discharge of all appropriate demands and expenses growing out of operation." A majority of this court has gone to greater lengths here in sustaining the outmoded doctrine than ever before. If the archaic doctrine of governmental immunity were annihilated once and for all by this court, situations such as we have here where, according to the allegations of the complaint, dishonest public officials conspired with private persons would become nonexistent. The very thought that they might be found guilty of malicious prosecution would be a deterrent to conduct not based on probable cause.

I would reverse the judgment in favor of all defendants.