SCHIER, Respondent, v. DENNY, Appellant.

*January 12—February 7, 1961.*

For the appellant there was a brief and oral argument by *John F. Friedl* of Wauwatosa.

For the respondent there was a brief by *Wiernick & Zurlo,* attorneys, and *Clinton A. Boone, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Boone.*

CURRIE, J. This action was before us on a prior occasion, and our opinion therein is reported in *Schier v. Denny* (1960), 9 Wis. (2d) 340, 101 N. W. (2d) 35. On such former appeal the principal issue was whether an action for malicious prosecution may be grounded upon a proceeding instituted before an administrative agency. We held that it may. Our conclusion in this respect is well buttressed by respectable authority.[1] However, we also determined on such prior appeal that the original complaint of the plaintiff failed to state a cause of action because it did not allege (p. 345), "interference with either the plaintiff's person or his property inflicting special damages to him."

Upon remand to the circuit court, that court granted to the plaintiff the privilege of pleading over. The plaintiff availed himself of such privilege and served and filed the amended complaint which is now before us on this appeal. The sole question which now confronts us is whether such amended complaint alleges the type of special damages which are necessary in order that a cause of action be stated in an action for malicious prosecution grounded upon a prior civil proceeding before an administrative agency.

We pointed out in our recent opinion in *Novick v. Becker* (1958), 4 Wis. (2d) 432, 437, 90 N. W. (2d) 620, that the courts of this country are divided on the issue, of whether there must have been interference with the person or property of the plaintiff in the prior civil suit, in order for the plaintiff to successfully maintain an action for malicious prosecution. Wisconsin is one of the states that does require the plaintiff in such an action for malicious prosecution to

---

[1] *Hardy v. Vial* (1957), 48 Cal. (2d) 577, 311 Pac. (2d) 494; *Dixie Broadcasting Corp. v. Rivers* (1952), 209 Ga. 98, 70 S. E. (2d) 734; *Rainier's Dairies v. Raritan Valley Farms* (1955), 19 N. J. 552, 117 Atl. (2d) 889; Restatement, 3 Torts, p. 459, sec. 680; Anno. 143 A. L. R. 157; 11 George Washington Law Review (1942), 118; 41 Michigan Law Review (1942), 549.

allege and prove special damages arising from the interference with his person or property by the prior civil suit.

The great weight of authority is to the effect that the proceedings before administrative agencies are absolutely privileged. The New Jersey court so held in an action instituted for libel and malicious interference with business grounded on a prior proceeding instituted by the defendant before the New Jersey director of milk industry to determine whether the plaintiff's dairymen's license should be revoked. *Rainier's Dairies v. Raritan Valley Farms* (1955), 19 N. J. 552, 559, 117 Atl. (2d) 889. We quote from the opinion in that case as follows (p. 892) :

"Although there is some diversity of opinion, most courts recognize that the persuasive social considerations underlying the grant of absolute privilege or immunity to participants in judicial proceedings are equally applicable to quasi-judicial proceedings of the nature presented in the instant matter ; indeed there is much to be said for the view that their force is even greater where, as here, the proceeding was not merely designed to determine private issues between private parties but was primarily designed to ascertain whether important departmental regulations which were promulgated in the public interest were being violated. See *Parker v. Kirkland,* 298 Ill. App. 340, 18 N. E. (2d) 709 (App. Ct. 1939) ; *Shummway v. Warrick,* 108 Neb. 652, 189 N. W. 301 (Sup. Ct. 1922) ; *White v. United Mills Co.* 240 Mo. App. 443, 208 S. W. (2d) 803 (Ct. App. 1948). Cf. Prosser, *supra,* 826: Note, Defamation—Absolute Privilege in Administrative Proceedings, 97 U. Pa. L. Rev. 877 (1949) ; 20 U. Chi. L. Rev. 677, 683 (1953) ; 13 Mo. L. Rev. 320 (1948)."

To permit the plaintiff in the instant action of malicious prosecution to recover for damages sustained by reason of injury to his reputation, either as a person or as a real-estate broker, as a result of anything contained in the defendant's complaint to the real estate brokers' board, or in consequence of defendant's testimony given at the hearing conducted by

such board, would circumvent the privileged character thereof and render such privilege valueless. This is the view voiced by the Iowa court in *Aalfs v. Aalfs* (1954), 246 Iowa 158, 162, 66 N. W. (2d) 121, 123, wherein the court stated:

"Indeed, it is an anomaly to say that no action will lie for malicious statements contained in a pleading in a civil suit while at the same time permitting an action for malicious prosecution of the suit in which such statements were the gravamen, or at least a substantial and material part of the complaint. Such a rule would in effect destroy the absolute privilege against actions for libel because of charges made in a civil suit."

While the action in *Aalfs v. Aalfs, supra,* grew out of an ordinary civil suit and not a proceeding before an administrative agency, the principle enunciated therein is equally applicable to both. This rules out the $10,000 damages alleged by the plaintiff in paragraph 9 of the instant amended complaint for injury to reputation. Furthermore, such alleged damages do not constitute "special damages" in the sense in which we employed such term in our former opinion on the prior appeal in this action, and in *Novick v. Becker, supra.*

This leaves for determination the question of whether the damages alleged in paragraphs 7 and 8 of the amended complaint do constitute such special damages. The test is whether the facts alleged in such two paragraphs disclose an interference with property. The particular damages alleged by such two paragraphs are for advertising expense incurred by the plaintiff in seeking new employees to take the place of employees who quit because of the filing by the defendant of his complaint with the board, and for loss of earnings which resulted from such original employees' quitting. Such allegations do not spell out indirect damages sustained by the plaintiff's real-estate broker's business as a result of loss of reputation growing out of the filing of such complaint, but

more direct damages arising from the quitting of employment by employees upon the filing of the complaint.

To pinpoint the issue, can there be an interference with property, which will support an action for malicious prosecution growing out of charges filed with an administrative agency, where the agency itself does nothing that directly affects the plaintiff's business outside of conducting a hearing? We do not deem that the answer is one to be derived from dictionary definitions, but rather on the basis of choice governed by considerations of public policy. In so doing, we are confronted with two competing and conflicting policies of the law. One is that a remedy should be provided for every wrong, and that no one should be permitted to injure the means of livelihood of another, by making false and malicious charges without probable cause before an administrative agency, without being called upon to respond in damages therefor. The second is that no one should be dissuaded from filing meritorious charges of improper conduct against another with an administrative agency, that is charged with the regulation of business or professional activities in the field in which such conduct lies, by fear that he will be subjected to possible suit for the payment of damages, if the agency should decide the issue in favor of the party complained against. Such administrative agencies have been created to protect the public interest, and it will be the public who will be the losers if justified complaints are not made known to the agency for fear of incurring liability arising by way of a suit for malicious prosecution.

After most careful consideration we have concluded that the public interest, of fostering the free filing of complaints with administrative agencies with respect to improper business or professional conduct without being subjected to reprisal in the form of damages exacted in a suit for malicious prosecution, outweighs the competing private interest of compensating a person whose business or profession has been

injured by the malicious filing of unwarranted charges. In reaching such conclusion, we are not unmindful that the same reason advanced to support it would also be applicable to suits for malicious prosecution grounded on unsuccessful criminal prosecutions. However, we think there are distinctions existing between administrative-agency proceedings and criminal prosecutions that justify the difference in result. In the first place, arrest of the person is ordinarily a concomitant of a criminal prosecution. Secondly, administrative agencies usually possess the power to hold a filed complaint confidential and not make public disclosure of the same until the agency has made a preliminary investigation and has determined that the same possesses some likelihood of being meritorious. If there are agencies which lack such power and discretion, the legislature can confer the same by appropriate legislation. On the other hand, as soon as a criminal information or indictment·has been filed in a court of record, it is a public record available to inspection and publicizing by anyone who cares to do so.

Because of the conclusion so reached, we hold that, unless the proceeding instituted before an administrative agency causes the agency to take some action that directly interferes with the person or property of the party complained against, there can be no special damages recoverable in an action of malicious prosecution grounded on such proceeding.

Two recent Georgia cases well illustrate an application of the rule we thus adopt. *Dixie Broadcasting Corp. v. Rivers* (1952), 209 Ga. 98, 70 S. E. (2d) 734, and *Rivers v. Dixie Broadcasting Corp.* (1953), 88 Ga. App. 131, 76 S. E. (2d) 229. In the first action, Rivers in his complaint for malicious prosecution charged the broadcasting corporation with maliciously and without cause having filed a protest containing false charges with the federal communications commission (F. C. C.) with whom he had previously filed an application for a radio-broadcasting permit. The complaint alleged as

special damages loss of income and additional expenses incurred due to the delay in constructing Rivers' broadcasting facilities caused by the filing of the protest with the F. C. C. The Georgia supreme court held that Rivers' complaint had failed to state a cause of action because no special damages had been alleged. This was because the delay in construction was due to the voluntary act of Rivers and not to any action of the F. C. C. Thereafter, Rivers amended his complaint so as to allege that the F. C. C. had withheld issuance of the permit applied for until final determination of the protest, and Rivers' loss of income and additional expense were directly due to such delay on the part of the F. C. C. The Georgia court of appeals held the amended complaint did state a cause of action because Rivers' damages were directly due to the action of the F. C. C. in delaying action on his application for a permit as a result of the filing of the protest.

In the instant case the real estate brokers' board in its discretion had the power under sec. 136.08 (2), Stats.[2] to have suspended the plaintiff's broker's license pending hearing of the complaint filed by the defendant against him. Such

[2] Sec. 136.08 (2), Stats., provides:

"The board may also on its own motion, or upon complaint in writing, duly signed and verified by the complainant, and upon not less than ten days' notice to the broker or salesman, suspend any broker's or salesman's license if it has reason to believe, and may revoke such license as provided hereafter, if it finds that the holder of such license has:

"(a) Made a material misstatement in the application for such license;

"(b) Made any substantial misrepresentation with reference to a transaction injurious to a seller or purchaser wherein he acts as agent;

"(c) Made any false promises of a character such as to influence, persuade, or induce the seller or purchaser to his injury or damage;

"(d) Pursued a continued and flagrant course of misrepresentation or made false promises through agents or salesmen or advertising;

"(e) Acted for more than one party in a transaction without the knowledge of all parties for whom he acts;

a temporary suspension of license would have been a direct interference with plaintiff's business and, therefore, would have constituted special damages sufficient to support an action for malicious prosecution. However, absent any allegation in the amended complaint that there was any suspension of plaintiff's broker's license, the damages alleged are insufficient to constitute the type of special damages necessary to support a cause of action for malicious prosecution grounded upon the proceedings instituted by the defendant before the board.

We assume that, if there had been such a suspension of plaintiff's broker's license, the plaintiff would have alleged the same in his amended complaint. Therefore, we deem it would serve no useful purpose to grant the plaintiff a further opportunity to plead over.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order sustaining the demurrer to the amended complaint, and granting the defendant judgment dismissing such complaint upon the merits.

---

"(f) Accepted a commission or valuable consideration as a salesman for the performance of any act specified in this chapter from any person except his employer;

"(g) Represented or attempted to represent a broker other than the employer, without the express knowledge and consent of the employer;

"(h) Failed, within a reasonable time, to account for or remit any moneys coming into his possession which belong to another person;

"(i) Demonstrated untrustworthiness or incompetency to act as a broker or salesman in such manner as to safeguard the interests of the public;

"(j) Paid or offered to pay a commission or valuable consideration to any person for acts or services in violation of this chapter;

"(k) Been guilty of any other conduct, whether of the same or a different character from that specified herein, which constitutes improper, fraudulent, or dishonest dealing; or

"(l) Violated any provision of this chapter."