NORMAN M. CLAPP, Secretary, Department of Transportation
You have requested my opinion whether the Division of Motor Vehicles must grant access to the public under sec. 19.21 (2), Stats., to files which are directly or indirectly related to the licensing and regulation of motor vehicle dealers, distributors and manufacturers under ch. 218, Stats. Your letter states that:
"The public documents with which we are concerned are the unsolicited complaints which citizens and other entities make to our agency concerning their transactions or contacts of various kinds with automobile dealers. Some of these complaints deal with product quality and, therefore, reflect on the distributor or manufacturer.
"Each file contains the original complaint, the documents and records necessary to resolve the issue, including investigative reports of the enforcement officials involved and the final report resolving the complaint. Many of these files contain information which was given on a confidential basis to the investigators.
"We do know that a number of the original complaints were expressly provided in confidence to the Division. On *Page 471 
many others we feel there is a strong presumption that confidentiality is implied, but there is no showing of this on the record. All complaints are made without any statutory requirements incumbent upon the complainant, as best we can determine."
Your first question is whether access for examination and copying must be accorded representatives of two private consumer organizations.
The reasons set forth in your letters and quoted above would not, in my opinion, justify withholding access to the requested files.
I am of the opinion that access for examination and copying must be accorded any member of the public, regardless of his motives, subject to the specific limitations contained in sec. 19.21, Stats., and the common-law limitations which existed prior to the adoption of sec. 18.01 (2), Stats., which is now sec. 19.21
(2), Stats.
State ex rel. Youmans v. Owens (1965), 28 Wis.2d 672,137 N.W.2d 470; 58 OAG 67 (1969).
Since a custodian is required to give specific reasons in each case where a request for access is denied, and since the reasons must relate directly to the specific document or record sought to be inspected, a discussion of the general problem and court-established guidelines follows.
Section 19.21 (1), (2) and (4), Stats., provides:
"(1) Each and every officer of the state, or of any county, town, city, village, school district, or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.
"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to *Page 472 
such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary.
"* * *
"(4) Any person who violates this section shall, in addition to any other liability or penalty, civil or criminal, forfeit not less than $25 nor more than $2,000; such forfeiture to be enforced by a civil action on behalf of, and the proceeds to be paid into the treasury of the state, municipality, or district, as the case may be."
In 54 OAG i, ix (1965) it is stated:
"* * * The court [in State ex rel. Youmans, supra] further held that sec. 18.01 [now 19.21], defining public records, includes not only such books, papers and records as are required by law to be filed, deposited or kept by a public officer, but that the term `public records' includes as well all written memorials made by a public officer within his authority where such writings constitute a convenient, appropriate, or a customary method of discharging the duties of his office. * * *"
Insofar as state records are concerned, the definitions in sec. 16.80 (2) (a) and (b), Stats., are important and provide:
"(a) `Public records' means all books, papers, maps, photographs, films, recordings, or other documentary materials or any copy thereof, regardless of physical form or characteristics, made, or received by any agency of the state or its officers or employes in connection with the transaction of public business and retained by that agency or its successor as evidence of its activities or functions because of the information contained therein; except the records and correspondence of any member of the state legislature. *Page 473 
"(b) `State agency' means any officer, commission, board, department or bureau of state government."
The files with which you are concerned are public records, relate to the duties of the Division of Motor Vehicles, and are open to examination and copying during office hours subject to limitation where the public interest in nondisclosure outweighs the strong public interest in full public access.
You do not claim nor have we been able to find any statute which would limit the right of access as to these records. You are aware that in another area of your responsibility a special statute, sec. 346.73, Stats., provides for confidential handling of written accident reports.
I am enclosing a copy of an opinion to the Secretary of the Department of Natural Resources, dated August 10, 1971, which is concerned with limitations on the right to inspect public records and includes a section on records received under a pledge of confidentiality. It is stated therein:
"I would suggest that the following criteria be considered, however, in deciding whether a particular pledge of confidentiality comes within the exception, and will, therefore, hold up in court. First, there must have been a clear pledge made. Second, the pledge should have been made in order to obtain the information. Third, the pledge must have been necessary to obtain the information.
"Finally, even if a pledge of confidentiality fulfills these criteria, thus making the record containing the information obtained clearly within the exception, the custodian must still make an additional determination in each instance that the harm to the public interest that would result from permitting inspection outweighs the great public interest in full inspection of public records. * * *"
With respect to the files involved in your questions, no pledge was given by department officers or employes. An official pledge of confidentiality would not, therefore, be a proper reason to deny examination or copying.
There may be valid reasons, not stated in your letter, why the custodian of the records involved should deny access. The *Page 474 
reason for denial may vary from case to case. At pages 682-683 of Youmans, the court stated:
"We deem it unwise to attempt to catalog the situations in which harm to the public interest would justify refusal to permit inspection. It is a subject which had best be left to case-by-case decision.
"The duty of first determining that the harmful effect upon the public interest of permitting inspection outweighs the benefit to be gained by granting inspection rests upon the public officer having custody of the record or document sought to be inspected. If he determines that permitting inspection would result in harm to the public interest which outweighs any benefit that would result from granting inspection, it is incumbent upon him to refuse the demand for inspection and state specifically the reasons for this refusal. If the person seeking inspection thereafter institutes court action to compel inspection and the officer depends upon the grounds stated in his refusal, the proper procedure is for the trial judge to examine incamera the record or document sought to be inspected. Upon making such in camera examination, the trial judge should then make his determination of whether or not the harm likely to result to the public interest by permitting the inspection outweighs the benefit to be gained by granting inspection.
"In reaching a determination so based upon a balancing of the interests involved, the trial judge must ever bear in mind that public policy favors the right of inspection of public records and documents, and, it is only in the exceptional case that inspection should be denied. In situations, such as in the instant case, where inspection is sought of a number of documents, the ultimate decision after conducting the balancing test might be to grant inspection as to certain of the documents and deny it as to others. If a single record of document is sought to be inspected, and disclosure of only a portion is found to be prejudicial to the public interest, the trial judge has the power to direct such portion to be taped over before granting inspection."
In Beikon v. Emery (1967), 36 Wis.2d 510, 153 N.W.2d 501, which was concerned with the refusal of a chief of police *Page 475 
to permit examination of a traffic citation by the attorney for the person involved, the court held that a specific reason must be given for each denial. Although no reason was given at the time, it was later contended that the reports were "confidential" and it was "contrary to the public interest" that the reports be made public. The court stated that these were legal conclusions and were not a substitute for specific reasons which might well have been available in that instance and must be given so that a court, if need be, may determine whether the reasons given would cause harm to the public interest that would outweigh the presumptive benefit to be derived from granting inspection.
In Youmans, the court stated that sec. 19.21, Stats., will be construed in pari materia with sec. 66.77, Stats., and that the policy guidelines for holding closed meetings set forth in sec. 66.77 (3), Stats., will be applicable to the question of confidentiality of records under sec. 19.21.
Section 66.77 (3), Stats., provides:
"(3) Nothing herein contained shall prevent executive or closed sessions for purposes of:
"(a) Deliberating after judicial or quasi-judicial trial or hearing;
"(b) Considering employment, dismissal, promotion, demotion, compensation, licensing or discipline of any public employe or person licensed by a state board or commission or the investigation of charges against such person, unless an open meeting is requested by the employe or person charged, investigated or otherwise under discussion;
"(c) Probation, parole, crime detection and prevention;
"(d) Deliberating or negotiating on the purchasing of public property, the investing of public funds, or conducting other public business which for competitive or bargaining reasons require closed sessions;
"(e) Financial, medical, social or personal histories and disciplinary data which may unduly damage reputations;
"(f) Conferences between any local government or committee thereof, or administrative body, and its attorney *Page 476 
concerning the legal rights and duties of such agency with regard to matters within its jurisdiction."
The (3) (c) Exception
Some of the records with which you are concerned may relate to violations of the criminal law. If a criminal prosecution has been commenced in which the record may be directly involved, the rules of criminal discovery or disclosure may apply to that record and the custodian should deny all access until he receives the prosecuting attorney's instructions regarding the record in question.
State v. Miller (1967), 35 Wis.2d 454, 151 N.W.2d 157;State v. Chacon (1971), 50 Wis.2d 73, 183 N.W.2d 84; Sec. 971.23, Stats.
Where no action has been commenced, but where prosecution is imminent (such as after the decision to prosecute has been made but the necessary papers have not yet been drawn up), the same course of action should be followed.
Where a record involves a potential criminal prosecution, but a determination to prosecute has not yet been made, several other factors might enter into a decision of whether or not to deny inspection. One such factor would be the amount of time elapsed since the receipt of the complaint or other information in the record relating to the criminal offense. As a general proposition, the longer the time that has elapsed, the less likely is there to be an overriding public interest in refusing inspection. Another important factor is theprobability of criminal prosecution. The less probable the prosecution, then the less likely, again, that the public interest in non-inspection outweighs the public interest in free access to all public records. Another factor that may enter into the determination is whether there exists a public need for information on a pressingpublic problem, particularly when the problem is one of great importance. Another important factor is whether there is a substantial probability that inspection mayinterfere with the prosecution of the criminal violation. See discussion infra on interference with investigation of licensing or disciplinary proceedings. *Page 477 
The factors discussed above are illustrations of the kinds of factors that should enter into a custodian's decision as to whether to deny access on the grounds that the records relate to a potential criminal prosecution, and that the public interest in maintaining secrecy during the investigation outweighs the public interest in free access to all public records. They are intended as examples of practical considerations that a reviewing court may give weight to in an action tomandamus the records, and are not intended to be an exhaustive list of factors. Finally, these factors are suggested from a pragmatic rather than a legal viewpoint, and I do not claim any specific legal authority for the use of any particular factor.
The (3) (e) Exception
The court has already spoken strongly on this exception in the Youmans case, and has placed great emphasis on the fact that damage to reputations must be "undue."
"We determine that this legislative policy of not disclosing data which may unduly damage reputations carries over to the field of inspection of public records and documents. The statutory word `unduly' is significant. As applied to inspection it does not bar all inspection of public records and documents that might damage reputations, but requires a balancing of the interest of the public to be informed on public matters against the harm to reputations which would likely result from permitting inspection.
"In the instant situation the public interest to be served by permitting inspection is to inform the public whether defendant mayor has been derelict in his duty in not instigating disciplinary proceedings against policemen because of wrongful conduct disclosed in the report. If the report contains statements of persons having first-hand knowledge, which disclose police misconduct, the fact that reputations may be damaged would not outweigh the benefit to the public interest in obtaining inspection. * * *" State ex rel. Youmans v.Owens (1965), 28 Wis.2d 672 at 685.
The court did indicate, however, that protection against undue damage to reputations would be an appropriate reason *Page 478 
for denial of access to public records under some circumstances:
"* * * On the other hand statements based upon hearsay or suspicion, or inconclusive in nature, would be of small public benefit if made public, and might do great harm to reputations." State ex rel. Youmans v. Owens,supra, at p. 685.
The statements referred to in Youmans were sworn statements before a grand jury, and, consequently, it appears that the court realized that such statements would be given a great amount of credibility by the public; unsworn statements or complaints, which ordinarily carry much less credibility, may not constitute such a great danger to reputations as in theYoumans case.
It would appear then, that in a determination to deny access on the grounds that it would cause undue harm to reputation, the potential credibility of the document, in both a legal and a pragmatic sense, would be an important factor to consider as it relates to the amount of potential harm to reputation.
The (3) (b) Exception
A very closely related exception to the requirement of free public access to public records raised by your letter involves
"* * * licensing or discipline of any * * * person licensed by a state board or commission or the investigation of charges against such person * * *." Sec. 66.77 (3) (b), Stats.
The Supreme Court, in the Youmans case, seems to have implied that where public access to records might interfere with an existing investigation or pending licensing or disciplinary proceeding, a custodian may validly deny inspection on that basis.
"No claim has been made that the investigation of the Waukesha police department is still continuing, or that inspection of the report would interfere with any contemplated disciplinary action." State ex rel. Youmansv. Owens, supra, at p. 685. *Page 479 
Thus the court implies that interference with a contemplated disciplinary proceeding would be grounds for determining that the public interest in nondisclosure outweighs the public interest in free access to public records.
It is my opinion, however, that the mere existence of an investigation pursuant to such licensing or regulatory authority is not, by itself, sufficient grounds to deny access to public records. Rather, inspection should be denied only when it would substantially interfere with the carrying out of the investigation or licensing or disciplinary proceedings. Examples of such circumstances might be where inspection might disclose the identity of an informant or where a complainant fears retribution. Another circumstance where denial of inspection may be in the public interest is where premature disclosure of the contents may mean the loss of evidence or will cause the person or persons under investigation to flee the State.
One possible circumstance that is related to both the (3) (b) and (3) (e) exceptions is when charges are filed with an agency that may be malicious or false. In Schierv. Denny (1961), 12 Wis.2d 544, 107 N.W.2d 611, an action by a real estate broker for malicious prosecution against a person who had complained to the Wisconsin Real Estate Brokers' Board where charges were dismissed after hearing, the court stated at pages 550-551:
"After most careful consideration we have concluded that the public interest, of fostering the free filing of complaints with administrative agencies with respect to improper business or professional conduct without being subjected to reprisal in the form of damages exacted in a suit for malicious prosecution, outweighs the competing private interest of compensating a person whose business or profession has been injured by the malicious filing of unwarranted charges. In reaching such conclusion, we are not unmindful that the same reason advanced to support it would also be applicable to suits for malicious prosecution grounded on unsuccessful criminal prosecutions. However, we think there are distinctions existing between administrative-agency proceedings and criminal prosecutions that justify the difference in result. *Page 480 
In the first place, arrest of the person is ordinarily a concomitant of a criminal prosecution. Secondly,administrative agencies usually possess the power tohold a filed complaint confidential and not make publicdisclosure of the same until the agency has made apreliminary investigation and has determined that thesame possesses some likelihood of being meritorious. Ifthere are agencies which lacks such power anddiscretion, the legislature can confer the same byappropriate legislation. On the other hand, as soon as a criminal information or indictment has been filed in a court of record, it is a public record available to inspection and publicizing by anyone who cares to do so.
"Because of the conclusion so reached, we hold that, unless the proceeding instituted before an administrative agency causes the agency to take some action that directly interferes with the person or property of the party complained against, there can be no special damages recoverable in an action of malicious prosecution grounded on such proceeding." (Emphasis added.)
It can be seen, from the sentences emphasized above, that the court has not determined whether administrative agencies in Wisconsin possess the power to deny access to filed complaints pending an initial determination that there is some likelihood of merit to them. My advice is that if a complaint is filed with the division that, on its face, provides a strong reason or reasons for believing that it is malicious or false, it would be proper to deny access to that complaint pending an initial investigation. Such investigation should then proceed at an accelerated rate. If evidence is uncovered showing that the complaint has some merit, then it should be treated as any other complaint. If, however, conclusive evidence of falseness or maliciousness is obtained, a final report to that effect should be prepared and inserted into the file and the matter be closed. Inspection of the complete file could then be permitted, including the original complaint and conclusion of the department.
The overriding policy dictates that most public records, including most filed complaints, will ordinarily be open to public inspection. That policy was succinctly expressed by the court in the Youmans case: *Page 481 
"* * * the public interest to be served by permitting inspection is to inform the public whether defendant mayor has been derelict in his duty in not instigating disciplinary proceedings against policemen because of wrongful conduct disclosed in the report. * * *"28 Wis.2d at 685.
Applied to the situation at hand, this means that the overriding public interest in free access to the records of your department is to provide the public, and any member thereof, the means to determine whether the division has adequately carried out its duties of regulation and licensing. Understandably, an agency may not welcome continual, close scrutiny into the everyday conduct of its affairs, but the work of the newly emerged public interest groups composed primarily of private citizens interested in protecting the consumer, the environment, the automobile driver, etc., has again demonstrated that such scrutiny can have a salutary effect on government, by providing impetus for stronger laws, by supporting agencies in their attempts at vigorous regulation in the public interest, by prodding other agencies into more vigorous action, and by counterbalancing the continual pressure of lobbyists representing the regulatees to which many agencies are exposed.
The reasons set forth in sec. 66.77 (3), Stats., are not all-inclusive insofar as sec. 19.21 (2), Stats., is concerned. At common law, certain other exceptions were recognized, including secrets of State such as diplomatic correspondence and certain police or prosecution records including reports of voluntary informers of crimes. 41 OAG 237 (1952). In InternationalUnion v. Gooding (1947), 251 Wis. 362, 372, 29 N.W.2d 730, it is stated:
"It is enough to say that there are numerous limitations under the common law upon the right of the public to examine papers that are in the hands of an officer as such officer. Documentary evidence in the hands of a district attorney, minutes of a grand jury, evidence in a divorce action ordered sealed by the court are typical."
The general reasons set forth in sec. 66.77 (3), Stats., however, are the primary bases upon which you should rely in determining specific reasons in each case should you *Page 482 
consider it necessary to deny a request for examination and copying. It is up to the custodian to determine and give specific reasons in each case of denial. It is up to the court to determine the worth of the specific reasons given where mandamus is sought.
Since the expressed legislative policy is weighted heavily in favor of free access and since sec. 19.21
(4), Stats., provides for a forfeiture for wilful denial of access, requests for examination and copying should be granted under reasonable regulations except in those cases where the custodian in good faith believes that disclosure would cause harm to the public interest which would outweigh the benefit to be derived from granting inspection.
These requirements place a great burden on the custodian in a department as large as yours and necessitate administrative controls as to filing methods and chain of responsibility so that prompt determinations may be made when requests for examinations are presented. In some cases requests are made to examine specific files. In other cases the request may be to conduct a search in a given area. Section 19.21 (2), Stats., contemplates that the citizens have the right to do either. It is suggested that files regarding which public inspection is questionable, if there are any, be "flagged." Where that is done, the secretary or other staff member can, upon request for examination, bring the matter to the attention of the custodial officer, who should make a determination at that time as to whether there are valid specific reasons why examination should be denied.
Your second question is whether the division is obligated to make a search of its records and supply the name, address and nature of complaints to a citizen.
The answer to this question is in the negative.
The custodian is not required by sec. 19.21, Stats., to make a search or compile a list or report. 52 OAG 8 (1963).
A search may be necessitated in connection with a request made under sec. 889.09, Stats., in connection with licensing matters, or documents required by law to be recorded or filed so that a certificate of nonfiling may be issued. *Page 483 
Section 889.08 (2), Stats., provides that both you as secretary and the head of the Motor Vehicle Division are legal custodians.
Searches can, of course, be made as a matter of accommodation or security.
Section 19.21 (2), Stats., grants any person the right to copy or duplicate any materials, at his own expense.
Any person may also, upon tender of the legal fee, require the custodian to furnish certified copies of official records under sec. 889.18, Stats.
It is my opinion that, where no fee is established by law, the custodian can ascertain and charge actual or a reasonably estimated cost of reproduction. 59 OAG 145, 147, 148 (1970).
Your third question is whether there is any legal liability on the part of custodial officers for permitting access to records which are not confidential by statute but which, if disclosed, might damage reputations.
As stated in Youmans, at pages 682-685, the fact that permitting examination might or would damage reputations is not a sufficient ground to deny access. It is only where the custodian determines that permitting examination would unduly damage reputation is it "incumbent upon him to refuse the demand for inspection and state specifically the grounds for refusal."
A custodial might in good faith determine that the benefits of permitting inspection outweighed the harmful effect on the public interest in permitting inspection even in a case where he was aware that certain parts of a document were false.
Since the legislative intent is heavily weighted in favor of permitting access, since sec. 19.21 (4), Stats., provides a penalty in the form of a forfeiture for unreasonable denial of examination, and since sec.889.18 (3), Stats., provides an additional forfeiture for unreasonable refusal to make copies, it is difficult to conceive of a situation where a court would impose any civil liability upon a custodian who acted in good faith in permitting examination and copying. *Page 484 
Insofar as the records involved relate to the licensing functions of the division and may be the basis for an investigation and hearing as to whether motor vehicle dealers, distributors and manufacturers should be entitled to continued licensing, it can be argued that the division is engaged in quasi-judicial functions.
In Schier v. Denny, supra, at page 551, the court suggested that the commencement of an administrative-agency proceeding may be the date of filing of the citizen's complaint. The preliminary investigation period may, therefore, be a part of the proceeding before the administrative agency and absolutely privileged. In such case the privilege or immunity would extend to the agency as well as the complainant.
Certain of the files may relate to the exercise of the limited legislative power you possess. Investigations and hearings incident to the exercise of the power to promulgate rules and regulations under sec. 218.01 (5), Stats., are also privileged.
In Baker v. Mueller (1954), 127 F. Supp. 722, it was held that officials in the exercise of legislative or quasi-judicial duties, acting within their jurisdiction, are not liable for damages either for mistake, errors of judgment or corrupt conduct, and the fact that an officer acted maliciously could not be inquired into. The decision was largely based onWasserman v. Kenosha (1935), 217 Wis. 223, 258 N.W. 857, which involved issuance and allegedly malicious and improper cancellation of a building permit. The Wasserman case was quoted with approval in Bendorf v.Darlington (1966), 31 Wis.2d 570, 578, 113 N.W.2d 419.
Good-faith acts of principal-State executive officers are accorded absolute privilege in the exercise of their duties.Ranous v. Hughes (1966), 30 Wis.2d 452, 464, 465,141 N.W.2d 251.
Ranous was an action for libel by a school teacher against a school board member for publication of allegedly defamatory material. The court stated that while ordinarily a public officer is not liable in a private action for acts performed in *Page 485 
good faith within the scope of his authority, he may be held liable for injuries resulting from his torts. At pages 464-465, the court stated:
"* * * It is a general rule that absolute privilege is accorded principal federal or state executive officers in the exercise of their duties. However, when considering the lower strata of executive officials such as defendant the majority of courts have concluded that such officials are not entitled to an absolute privilege, but only a conditional privilege, although there are authorities according absolute privilege to minor officials. * * *" (Authorities cited in footnotes omitted.)
At pages 466-467, the court stated:
"In determining the scope of the privilege to be accorded public officials while acting in an executive or administrative capacity competing values exist: (1) of insuring that government officials not to be deterred from performing their public duties in fear of being held individually liable for what they may say or publish, and (2) of protecting private citizens from having their private or professional reputations damaged by defamatory matter uttered or published by public officials. Giving due weight to these competing values, we feel that with respect to all but executive officers in the higher echelons of government the according of conditional privilege rather than absolute privilege is preferable. Therefore we conclude that school board members do not fall within the category of high ranking executive officials of government whose defamatory acts should be accorded absolute privilege. We also conclude, however, that the defense of conditional privilege is available to defendant." (Authority cited in footnote omitted.)
The conditional privilege which protects lesser officials may be lost by abuse and the supreme court adopted the Restatement rule as to loss. At page 468 ofRanous the court stated:
"The Restatement further lists the four conditions which may constitute an abuse of the privilege, and the occurrence of any one causes its loss. These are: (1) The defendant *Page 486 
either did not believe in the truth of the defamatory matter or, if believing the defamatory matter to be true had no reasonable grounds for so believing (2) because the defamatory matter was published for some purpose other than that for which the particular privilege is given; (3) because the publication was made to some person not reasonably believed to be necessary for the accomplishment of the particular privilege; or (4) because the publication included defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the privilege is given." (Authorities cited in footnotes omitted.)
Legal custodians are also protected in good-faith execution of their duties by reason of the following statutes.
Section 165.25 (6), Stats., requires the attorney general, at the request of the department head and approval by the governor, to appear for and defend State officers and employes of departments charged with the enforcement of laws, in tort actions. Section 270.58 (1), Stats., provides that the State shall pay judgments taken against State officers and employes pertaining to carrying out of their duties where the court or jury finds that they acted in good faith.
Where a State officer is involved, the additional defense of lack of consent, by the state, to be sued would also be available. A suit against a State officer in his official capacity or for acts performed in his official capacity is a suit against the State.
Kenosha v. State (1967), 35 Wis.2d 317, 323, 324,151 N.W.2d 36.
Townsend v. Wisconsin Desert Horse Association andWisconsin Exposition Department (1969), 42 Wis.2d 414, 424,167 N.W.2d 425.
Chart v. Gutmann (1969), 44 Wis.2d 421, 426, 427,171 N.W.2d 331.
RWW:RJV *Page 487