Argued February 5, affirmed April 22, 1976

# DONOVAN, *Appellant,*
## *v.*
# BARNES, *Respondent.*

548 P2d 980

*Ellen Rosenblum,* Eugene, argued the cause for appellant. On the briefs were David Jensen, and Hammons, Phillips & Jensen, Eugene.

*Robert E. Franz, Jr.,* Eugene, argued the cause for respondent. On the brief were William G. Wheatley, and Jaqua & Wheatley, Eugene.

HOWELL, J.

## HOWELL, J.

This is an action for malicious prosecution arising out of a disciplinary proceeding at the University of Oregon which was instigated by the defendant against the plaintiff. The trial court sustained a demurrer to plaintiff's complaint, and plaintiff appeals.

Plaintiff's complaint alleges that the defendant wrongfully filed an official charge sheet with the University of Oregon Student Court accusing plaintiff of several violations of the Code of Student Conduct. The violations charged were (a) obstruction of university functions, (b) malicious destruction of university property and (c) disorderly conduct. The complaint alleges that these charges were made maliciously and without probable cause and that defendant was aware that the charges were false. The complaint further alleges that, at the trial held on these charges before the Student Court, plaintiff faced the possible sanction of expulsion from the university. However, at the trial, the prosecutor moved for a judgment of acquittal, and a judgment for plaintiff was entered on that basis. Finally, the complaint alleges that, as a result of defendant's instigation of these proceedings, plaintiff suffered humiliation, anguish, mental distress and damage to his reputation and was forced to drop a class in order to prepare his defense. Plaintiff sought judgment for compensatory and punitive damages.

The only issue on appeal is whether plaintiff's allegations are sufficient to state a cause of action against the defendant for malicious prosecution.

Plaintiff contends that student disciplinary proceedings at the University of Oregon should be considered to be quasi-criminal in nature and, therefore, not subject to the "special injury" requirement that normally attaches in actions for malicious prosecution based on civil proceedings.[1] Defendant argues that, for

---

[1] The "special injury" restriction requires the allegation and proof of some special loss or unusual hardship incurred as a result of the malicious

reasons of public policy, actions for malicious prosecution should not be allowed in connection with student disciplinary proceedings, and that, if such actions are to be permitted, the "special injury" restriction should be held applicable.

We do not agree with defendant's contention that malicious prosecution actions should never be allowed to be based upon the malicious prosecution of a student disciplinary proceeding. In the absence of any official duty to instigate or prosecute such an action, there would appear to be no basis for the application of an absolute privilege. Moreover, we doubt that the public interest in disciplining university students merits greater protection than the public's interest in bringing criminals to justice. Since there is no absolute privilege to initiate criminal proceedings, we would be hard pressed to justify a special rule extending an absolute privilege to instigate disciplinary proceedings.

Similarly, we find no basis for applying any different standards to this action merely because it is based on an adjudicatory proceeding before an administrative body rather than a proceeding before a judicial tribunal.[2] We see no reason to apply a different set of

prosecution of the original action. *See Buck v. Gale,* 271 Or 90, 530 P2d 1248 (1975); *Baisiger v. American Steel,* 254 Or 204, 451 P2d 868, 458 P2d 932, 40 ALR3d 289 (1969); *Carnation Lbr. Co. v. McKenney et al,* 224 Or 541, 356 P2d 932 (1960).

The justification for this restriction lies in the policy of maintaining free access to the courts by individuals seeking to vindicate their rights. This policy could be impaired if litigants had reason to fear retaliatory action should their claim prove unfounded. However, the policy is overcome when in seeking to vindicate his own rights a litigant interferes with the property or liberty of the defendant in such a way as to cause the defendant to incur some special damage or unusual hardship. *See Carnation Lbr. Co. v. McKenney, supra; Melvin v. Pence,* 130 F2d 423 (DC Cir 1942). *See also* W. Prosser, The Law of Torts 851, § 120 (4th ed 1971).

[2] The authority of the Student Court stems from that delegated to the University of Oregon by the State Board of Higher Education in accordance with ORS 351.070(2)(b) and ORS 352.010. *See* Oregon Administrative Rules, Ch 580, §§ 12.130, 33.210-.230, 42.410. *See also* Linde, *Campus Law: Berkeley Viewed from Eugene,* 54 Calif L Rev 40, 42-60 (1966).

rules to actions for malicious prosecution based on administrative proceedings of an adjudicatory nature than those which are applied to similar actions based on judicial proceedings. Since the adjudicatory function performed is essentially the same, we believe that the same criteria should be applied to the actions of both types of bodies. As was stated by one of the earlier courts to consider this question:

> "* * * Much of the jurisdiction formerly residing in the courts has been transferred to administrative tribunals, and much new jurisdiction involving private rights and penal consequences has been vested in them. In a broad sense their creation involves the emergence of a new system of courts, not less significant than the evolution of chancery. The same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. When one's livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official. Nor should his right to redress the injury depend upon the technical form of the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty.
>
> "* * * * *
>
> "In our judgment no other conclusion would be tenable. When private as well as public rights more and more are coming to be determined by administrative proceedings, it would be anomalous to have one rule for them and another for the courts in respect to redress for abuse of their powers and processes." *Melvin v. Pence,* 130 F2d 423, 426-27 (DC Cir 1942).

*See also Hardy v. Vial,* 48 Cal 2d 577, 311 P2d 494 (1957); *Kauffman v. A. H. Robbins Co.,* 223 Tenn 515, 448 SW2d 400 (1969); Annot., 143 ALR 157 (1943); Restatement of Torts § 680 (1938).

We conclude that an action for malicious prosecution may be based upon the initiation or instigation of an administrative proceeding of a judicial nature and that the rules and standards that govern actions based

upon civil proceedings should also apply to actions based upon administrative proceedings.[3]

The most recent pronouncement of the rule applied to actions for the malicious prosecution of civil proceedings in Oregon is found in *Buck v. Gale,* 271 Or 90, 530 P2d 1248 (1975), which quotes the following language from an earlier case, *Balsiger v. American Steel,* 254 Or 204, 206, 451 P2d 868, 458 P2d 932, 40 ALR3d 289 (1969):

> " 'The general rule, followed in most states, is that a civil action although commenced with malice and without probable cause, does not give rise to a cause of action for malicious prosecution unless there has been arrest of the person, seizure of property, or other special injury to the defendant in that action which would not ordinarily result in all similar causes seeking recovery of damages. *Carnation Lbr. Co. v. McKenney et al,* 224 Or 541, 356 P2d 932 (1960); *Mitchell v. Silver Lake Lodge,* 29 Or 294, 45 P 798 (1896). * * *' " 271 Or at 92-93.

An exception to the requirement that some "special injury" be pleaded and proved has been made in a limited number of situations thought to involve an "inherent" interference with person or property. In

---

[3]It has been suggested that the same rules which apply to malicious prosecution actions based upon criminal proceedings should be applicable to those based upon administrative proceedings. *See* Note, 1962 Wis L Rev 701, 703-04 (1962):

"In all jurisdictions where the action of malicious prosecution has been extended to administrative suits, the action had previously been extended to civil suits. In all such jurisdictions, the special damage rule of actions based on civil suits has been applied rather than the broader per se rule of actions based on criminal suits. Nevertheless it might be argued with some force that similarity in purpose of criminal and administrative proceedings would lead to application of the same rule of damages. In both, the tribunal is interested in protecting specific public interests as defined by statute. In the ordinary civil proceeding, the tribunal determines primarily private disputes. Publication of the charge that the defendant had violated a public interest would seem to have the same defamatory effect on his character as would a charge of criminal violation. Arguably, then, the instigation of the administrative action should carry with it the damages necessary to sustain a malicious prosecution action." (Footnotes omitted.)

However, we have determined to adhere to the general rule and to apply the same rules which govern civil actions. *See Melvin v. Pence,* 130 F2d 423 (DC Cir 1942).

Oregon, this exception has been recognized in insanity proceedings, *Hill v. Carlstrom,* 216 Or 300, 338 P2d 645 (1959); in involuntary bankruptcy proceedings, *Balsiger v. American Steel, supra;* and in attachment cases, *Alvarez v. Retail Credit Ass'n.,* 234 Or 255, 381 P2d 499 (1963). Other jurisdictions have recognized this exception in other similar situations. *See, e.g., Lueptow v. Schraeder,* 226 Wis 437, 277 NW 124 (1938) (juvenile delinquency); *Chappelle v. Gross,* 26 App Div 2d 340, 274 NYS2d 555 (1966) (lis pendens filed). *See also,* Prosser, Law of Torts 851-52, § 120 (4th ed 1971).

■ Plaintiff would have us recognize this exception in cases involving student disciplinary proceedings before the University of Oregon Student Court. Plaintiff contends that these proceedings, like insanity and juvenile delinquency proceedings, are "quasi-criminal" in nature and therefore that they involve an "inherent" interference with personal liberty. He argues that the offenses with which he was charged are criminal in nature, that the procedures followed by the Student Court closely parallel those applicable to criminal actions, and that the sanctions which could have been imposed are penal in character.

An examination of the Code of Student Conduct lends some credence to plaintiff's claims. As a result of defendant's actions, plaintiff was charged with three offenses under the Code: (a) malicious destruction of university property, (b) obstruction of university functions and (c) disorderly conduct. Two of these offenses are also crimes under state law.[4] Had plaintiff been found guilty of these offenses by the Student Court, he would have been subject to a possibility of expulsion, suspension or disciplinary probation by the university. Other possible sanctions included restitution of dam-

---

[4] *See* ORS 164.345, 164.354, 164.365 (making criminal mischief a criminal offense) *and* ORS 166.025 (making disorderly conduct a criminal offense).

aged property or money and the rendition of labor or services.[5]

Similarly, the procedural aspects of the Student Court do seem to closely parallel criminal procedures in the courts. The Code provides that the defendant shall be apprised in writing of the charges and evidence against him, of the referral of his case to the Student Court and of his rights under the Code. At his hearing, the defendant may appear personally or through counsel and, at his request, he may have a law student appointed to defend him. He must plead either "guilty" or "not guilty."

If the defendant pleads "not guilty," both the Student Prosecutor and the defendant or his counsel may make opening statements. Next, the Student Prosecutor will present his evidence and call his witnesses. The defendant has the right to confront and cross-examine these witnesses. The defendant may then present evidence on his own behalf. The Code also provides for objections and motions and for an opportunity to make closing arguments by both the prosecution and the defense. If the defendant is found guilty he may offer additional evidence and arguments pertinent to sanctioning. A written copy of the decision must be given to the student, and he must be advised in writing of his right to appeal to the University Appeals Board.

In summary, an examination of the procedural aspects of the Code of Student Conduct indicates that there is a distinct similarity between student disciplinary proceedings at the University of Oregon and ordinary criminal proceedings. Indeed, the extent of the similarities leads us to conclude that the Student Court procedures were intentionally designed to closely parallel criminal court procedures.

---

[5] With respect to these last two sanctions the Code provides:
"Such sanctions should be employed only in cases where principles of restitution or *rehabilitation* render such sanctions peculiarly appropriate." (Emphasis added.)

However, there remain important and, in our view, crucial distinctions between a disciplinary action and a criminal action. The sanctions which may be imposed upon a defendant found guilty of the offense charged under the Code of Student Conduct are not criminal penalties. Although sanctions such as expulsion, suspension and disciplinary probation, as well as those of restitution of damaged property or money and the rendition of labor or services, are clearly penal in nature, they are not criminal sanctions since they do not involve the imposition of a fine or incarceration. On this basis, student disciplinary proceedings are distinguishable from criminal actions and from such "quasi-criminal" proceedings as insanity and juvenile delinquency proceedings, which do involve a possibility of incarceration or institutionalization.[6] Although we recognize that an expulsion or suspension from the university would entail some loss of liberty, we do not believe that that loss is of a comparable magnitude.[7] Moreover, since the sanctions which may be imposed are less severe, the social stigma involved in disciplinary cases will not normally be as significant as that involved in criminal and quasi-criminal cases.

We also note that criminal proceedings ordinarily involve a formal arrest and, frequently, a detention of

---

[6] In *Hill v. Carlstrom,* 216 Or 300, 338 P2d 645 (1959), we compared an insanity proceeding to a criminal action and distinguished it from a civil act as follows:

"* * * In respect to its relation to an action for malicious prosecution, it much more closely in its characteristics resembles the characteristics of a criminal action. It is not instituted for the enforcement of an individual right or the redress of an individual wrong. The person who institutes it has nothing personally to gain or lose, and if acting in good faith his sole purpose is the protection of the alleged lunatic and the protection of society. In its consequences it may be more serious than a criminal prosecution. It seeks nothing less than the incarceration of the individual proceeded against. * * *" 216 Or at 305, *quoting Reade v. Halpin,* 193 App Div 566, 184 NYS 438, 439 (1920).

[7] *But see* Restatement (Second) of Torts, § 654, and comment (a) (Tent. Draft No. 13, 1967). The drafters of the Restatement would apparently include disciplinary proceedings under § 654 which deals with the wrongful prosecution of criminal proceedings.

the individual charged. Similar detentions often accompany insanity and juvenile delinquency proceedings as well. In contrast, no arrest or detention is possible in connection with these student disciplinary proceedings. Therefore, we conclude that student disciplinary proceedings do not involve an inherent interference with personal liberty.

Plaintiff also argues that, like involuntary bankruptcy proceedings, student disciplinary proceedings involve an inherent interference with property interests. Plaintiff notes that, because of defendant's actions in instigating the proceedings against him, he was faced with a loss of time, credit, money and academic standing which would have been applied retroactively to the beginning of the term in the event of expulsion or suspension. He contends that his situation was therefore similar to that faced by the plaintiff in *Balsiger,* who had involuntary bankruptcy proceedings brought against him. In *Balsiger* we held that:

> "* * * [T]he filing of a bankruptcy petition necessarily caused such interference with the property of the debtor as to give rise to an action for malicious prosecution. Though there is no actual seizure of property or appointment of a trustee, the alleged bankrupt's property is in limbo, because the trustee's title, if and when appointed, reverts back to the date of the filing of the petition in bankruptcy. * * *" 254 Or at 212

Thus, in *Balsiger* we found an "inherent" interference with the alleged bankrupt's property by the initiation of involuntary bankruptcy proceedings.

Although there is some similarity between the retroactive effect of an expulsion or suspension and the retroactive effect of an adjudication of bankruptcy, we again conclude that the two situations are distinguishable on the basis of the magnitude of the interference involved. An adjudication of bankruptcy affects substantially all the assets of the bankrupt. Therefore, the initiation of bankruptcy proceedings acts to place substantially all of the alleged bankrupt's property in "limbo." In contrast, any interference with a student's interest in his time, credit, money and

academic standing caused by the possibility of a retroactive application of an expulsion or suspension normally will relate only to credits being accumulated and time and money being invested subsequent to the preceding term. We do not believe that this is a sufficiently substantial interference with the student's property interests to justify an exception to the special injury rule.

Having thus determined that student disciplinary proceedings at the University of Oregon are distinquishable from those situations which do warrant an exception to the special injury requirement for malicious prosecution actions, we must consider whether this plaintiff has alleged any such "special injury * * * which would not ordinarily result in all similar causes seeking recovery of damages." *Buck v. Gale, supra,* at 92; *Balsiger v. American Steel, supra* at 206.

In *Buck v. Gale, supra,* we determined that the proper construction to be given the term "special injury" was that set forth in *Wetmore v. Mellinger,* 64 Iowa 741, 18 NW 870 (1884), which we quoted as follows:

> " '* * * But if an action *is so prosecuted* as to entail unusual hardship upon the defendant, and subject him to special loss of property or of reputation, he ought to be compensated. So, if his property be seized, or if he be subjected to arrest by an action maliciously prosecuted, the law secures to him a remedy. In the case at bar the pleading and evidence show no such special damages. No action could be prosecuted to recover money fraudulently obtained, in which the defendant would not suffer the very things for which plaintiff in this case seeks compensation in damages.' " 271 Or at 94.

The only allegations of damage in this case are that "plaintiff suffered humiliation, damage to his reputation, anguish, and mental distress" and that "plaintiff was forced to drop a class in order to prepare his defense." Clearly, the manner in which his case was prosecuted did not force plaintiff to drop a class. The dropping of a class was apparently a strategic decision which plaintiff made of his own volition in order to

better prepare his defense.[8] Thus, it does not qualify as a special injury or unusual hardship under the rule of *Buck v. Gale.*

■ The allegation concerning plaintiff's humiliation and the damage to his reputation presents a more difficult question, but we believe that it must be similarly resolved. A loss of reputation may be a sufficiently unusual hardship to meet the special injury requirement if the injury is of a kind not ordinarily resulting from similar causes. However, if the injury to plaintiff's reputation is not of an unusual nature, but rather of the same kind as that normally flowing from the maintenance of similar actions, the plaintiff is without a remedy. *See Wetmore v. Mellinger, supra.*

A student disciplinary proceeding in which the defendant is accused of criminal conduct undoubtedly causes some degree of humiliation and some loss of reputation. Although this injury is probably less serious than that which would result from an actual criminal prosecution, it is equally probable that the injury is substantially greater than that suffered as the result of the commencement of an ordinary civil action seeking a recovery of damages. A student disciplinary proceeding is not a contest between two individual litigants; it is a prosecution of an individual defendant by the governing body of the university. Correspondingly, the publication of the charge embodies not merely a claim by an individual litigant but, rather, an official accusation by the governing body of the institution he attends.

■■ However, under the rule of *Buck v. Gale,* it is not enough that the prosecution of the action entails a greater hardship than that which would flow from an ordinary civil action. The hardship must also be greater than that which ordinarily results from the prosecution of *similar* causes. Although *Buck v. Gale*

---

[8] *Compare Schier v. Denny,* 12 Wis 2d 544, 107 NW2d 611 (1961); *Dixie Broadcasting Corp. v. Rivers,* 209 Ga 98, 70 SE2d 734 (1952); *Rivers v. Dixie Broadcasting Corp.,* 88 Ga App 131, 76 SE2d 229 (1953)

[ 712 ]

considered only the application of this rule to civil actions seeking damages, such as those based upon a breach of contract or a civil tort, we believe this rule should be extended to student disciplinary proceedings as well.[9] Therefore, since there was no allegation that the humiliation and loss of reputation which this plaintiff suffered were any greater than that which would ordinarily result from the instigation of similar disciplinary proceedings, we conclude that plaintiff has not alleged sufficient facts to state a cause of action for malicious prosecution against the defendant in this case.

Affirmed.

**BRYSON, J.,** specially concurring.

I concur in the result. However, I have no difficulty in concluding as a matter of law that the charges made by defendant against plaintiff to the University of Oregon Student Court are civil and not criminal in nature. A criminal matter is usually one which the government deems injurious to the public at large, as provided by a statute, and is prosecuted by a judicial proceeding in the state's or government's name. An act such as the defendant charged may be both a crime and a tort but to constitute a crime it must be an offense against the public and brought by the state or governmental body. Usually a crime entails arrest and possible loss of liberty or freedom.

In malicious prosecution cases arising out of a civil proceeding, it is necessary to plead and prove that actual damages are caused. Prosser, Torts 875, § 114 (3d ed 1964). As pointed out by the majority, plaintiff

---

[9] In reaching this conclusion we are cognizant of the fact that through similar reasoning this restriction could be extended to actions for malicious prosecution based upon a bankruptcy proceeding, an insanity proceeding or even a criminal prosecution. However, the crucial distinction between these cases and the present case concerns the magnitude of the potential interference with the liberty or property of the accused. *See also Schier v. Denny,* 12 Wis 2d 544, 551, 107 NW2d 611 (1961).

only alleged that he "suffered humiliation, damage to his reputation, anguish, and mental distress."

Also, the majority states, "Although we recognize that an expulsion or suspension from the university would entail some loss of liberty * * *." I cannot agree with this in the context that we usually consider when speaking of loss of liberty.

The plaintiff's complaint failed to state a cause of action, and I would affirm the trial court in sustaining the demurrer to the complaint.

**O'CONNELL, C. J.,** specially concurring.

I specially concur solely for the purpose of urging the adoption of the views I expressed in my dissent in *Buck v. Gale,* 271 Or 90 at 95, 530 P2d 1248 at 1250 (1975).